## Rosenburger *against* Schull.

Upon the trial of the validity of a treasurer's sale of land for taxes, the fact whether the land was seated or unseated at the time the tax was assessed is properly left to the jury.

It is sufficient that there is a personal responsibility for taxes in order to make it the duty of the assessor to assess the land as seated.

ERROR to the common pleas of *Armstrong* county.

Daniel Rosenburger against Jacob Schull. Ejectment for a tract of land.

The plaintiff gave in evidence and relied upon a treasurer's sale of the land in dispute for taxes of 1812 as unseated, and showed that title to be regularly vested in him.

The defendant gave in evidence a regular chain of title from the commonwealth to himself, and to avoid the effect of the plaintiff's title proved as follows :

Peter Shaffer, sworn. " I cleared a little field, about two acres, on this place in 1808 or 1809 ; I had fenced and raised grain the first year, and occupied it ever since. May be not steady all the time. I think it lay idle some years. Cannot say I occupied it every year the first four or five years. Can't say what year I raised grain on it the first four or five years. In 1811 I let Conrad Carver have it a year, I think, not certain. Can't say I had it in occupation the next year. I am pretty well convinced that it lay out one year, but can't say what year it was. I believe it was the same year that Nicholas Clinginsmith left that county I leased to Carver. The year Carver had it he put some flaxseed and buckwheat into it." Being

[Rosenburger v. Schull.]

cross-examined, he said : " I had no authority from the owner to occupy that land ; I lived with my father, and his tract adjoined it. I do not know the original lines of the survey ; Richards found the line between father's and the place, but not round the tract. The original line was not found along where the little field was cleared. Richards ran it according to the draft, as he said. As he ran the line it ran through this little two acre field and took most of it ; a strip of about two or three perches at one end, and about four or five at the other sixteen perches long, that was not in the bottom survey."

Philip Clinginsmith, sworn. " I was present at the clearing of the field in 1808 or 1809. I have seen it every year since. The fences were not so good as they might be, but as usual. Nicholas Clinginsmith left that country in 1812."

The court below (White, President) instructed the jury what land was subject to taxation and sale as unseated, and what improvement would take from it that character and render liable the person of the cultivator for the tax, and referred it as a matter of fact to the jury to inquire whether there was such a cultivation of the land as made it the duty of the assessor to assess it as seated land.

Verdict for the defendant.

*Buffington*, for plaintiff in error, cited, 2 *Watts* 421 ; 5 *Watts* 441.

*W. Forward*, for defendant in error.

Both parties claim under the same title. The plaintiff below, who is also plaintiff in error, founded his claim on a treasurer's deed, and an assessment of taxes on the land in dispute in 1812, viz. a county tax of 79 cents and a road tax of 39 cents. No basis of the sale other than *this* assessment was shown in evidence. The taxes of the previous year had been paid, and also of 1812 as Mr Denny alleges and believes, but the receipt for that year could not be found. The only error now insisted on is found in the charge of the court on the subject of the improvements made by Peter Shaffer. He states that " in 1808 or 1809 he cleared a little field of about two acres on this *place*, fenced and raised grain on it the first year, and occupied it ever since, though he could not say he did so steady all the time, could not say he occupied it every year the first four or five years, or what years he raised grain on it in that time ; is pretty well convinced it lay out one year, but cannot say what year. He *leased* it to Carver. The year Carver had it, he put some flaxseed and buckwheat in it. He had it one year, believes it was the same year Nicholas Clinginsmith left that country. The witness lived with his father on the adjoining tract ; did not know the lines of this survey ; had no authority from the owner to occupy this land."

Philip Clinginsmith testified that Nicholas Clinginsmith left the country in 1812 (fixing thereby the year that Carver occupied the land) ; "that he had seen the improvement every year since 1808 or

[Rosenburger v. Schull.]

1809 when it was made, that the fences were not as good as they might be, but as usual." The fact of the alleged lease to Carver in 1812, and of there being produce on the land in that year more than sufficient to pay the taxes, is referred to by the court, and together with the other testimony submitted fairly to the jury, who were instructed that, if it were believed, the land was not unseated at the date of the assessment, it could not be sold for taxes.

Shaffer's ·improvement and occupation were notorious; he did not clear the land for his father, but for *himself*. This fact is demonstrated by his lease to Carver, and the contrary is not insinuated in his testimony.  The land was cultivated in the usual manner, and remained no longer *untilled* than good husbandry and a proper rotation of crops required.  It was not *abandoned*: the lease to Carver proves this.  It was given in 1812; a fact in regard to which, if there be any doubt, the record certified by the court below will remove it.

It is said that the field was extended over the line of old Shaffer by mistake.  Any argument attempted to be drawn from this source is neutralized by the proof that it was cleared by the son for *himself*, without any authority or direction from the father, and that he believes it not to be within his father's line.  It is more than probable, from the circumstance that he used and claimed it as his own and *leased it to Carver*.  He says he did not know the line; but he does not say he *intended* to clear on his father's tract, and not on the land in dispute.  The inference as to his *actual intention* may be made with equal plausibility either way.  We are therefore left to discover his purpose from his *conduct*, which warrants the opinion that he *intended* to improve on this tract for himself, and not for his father. It is not however a case in which a field was extended over the line of a seated tract on which it was *commenced*.  The improvement of Shaffer was not part of a larger field on old Shaffer's land "which had been extended into this tract by mistake or design;" see 2 *Watts* 423.  It was an enclosed field, *originally* opened and cultivated *on the land in dispute*, from which field the line of survey cuts off but a few perches.  A draft of the survey made since the trial is produced by the plaintiff.  Supposing it to be accurate, a fact about which I do not pretend to have any knowledge, the field which is represented by dotted lines is left nearly square, and is seen on the short line, north twenty-three perches, east sixty-seven perches.  Whether this line was originally run and marked or not, is a question not worth the trouble;of examination, although the fact is now to be presumed.  But suppose a clearing over the line by mistake, it does not follow that the land was unseated.  It was not a clearing over to the extent of "a few feet or a few yards," as in the case put by the chief justice in 2 *Watts* 503, but the enclosure and cultivation of a space which would annually yield five times the value of the taxes as assessed in 1812. In Fish *v.* Brown, 5 *Watts* 441, the field was split nearly in the middle.  The denomination of the tract in dispute was however fixed by the part left *within* its lines.  Was there a substantial im-

[Rosenburger v. Schull.]

provement within the lines at the time of the assessment? This is the true question. It may have been occasionally unoccupied—the produce may have been "inadequate to the tax." But these cir-cumstances are not regarded, "for the person of the cultivator is charged, which is a sufficient security in contemplation of law, though nothing might be got from the produce of the land." Shaf-fer *v.* M'Cabe, 2 *Watts* 422, 423; Kennedy *v.* Daily, 6 *Watts* 273. "The assessor is presumed from the nature of his duties to have made himself acquainted with the lines and land marks within his district, as well as the occupancy of the proprietors, for he has to do not merely with tracts, but with fractions of tracts, &c." Per C. J. Gibson, 2 *Watts* 422, 423. Nor is the character or effect of an improvement varied or influenced by the fact of its having been made by a trespasser. 2 *Watts* 422. Its efficacy is considered wholly apart from any injury as to the *title*, the *motives*, or the *knowledge* of the person making it. In this case the plaintiff is obliged to contend that a field of an acre and a half which was fenced, cultivated, and yielded a profit, is not a substantial improvement entitled to the notice of the assessor, an argument which supposes it was worth nothing to the improver himself. Why then did he expend his labour in clearing or fencing it? Would such a plea have availed a lawless intruder seeking to expel Shaffer from the possession, or would he have resisted it as an insult? The assessor had a right to regard this improvement as Shaffer regarded it, and to charge him the oc-pant with the tax. Its dimensions may be disproportionate to the size of the tract; but parcels of land much less than this are often purchased in the country for residences or for cultivation, and con-stitute the entire landed estate of their respective proprietors. The rule contended for would exclude them from taxation. If the ques-tion were, whether the annual produce of this field would have paid the taxes charged on the whole tract, the title of the defendant would be unquestionable. But the inquiry is, whether the assessor might treat this as an improvement and charge the occupant. Sup-pose he had done this, could he who enclosed, used and leased the field have escaped the tax upon the plea that it was valueless? Sup-pose Carver, the tenant of the field in 1812, had been charged, could he have evaded payment on the pretence that he had rented a place too small to be taxed? The lease itself establishes the fact of pro-ductiveness—of annual value, and "gives character and denomina-tion for the purposes of assessment." 2 *Watts* 422. The attempt on the part of the landlord and tenant or others to make the subject of the lease a mere *nonentity* must be unavailing.

PER CURIAM.—The law of the case seems to have been already settled. Was there a substantial occupancy which might have pre-sented itself to the eye of the assessor, is a question that was suffici-ently raised and fairly put to the jury. The assessor had nothing to do with the misapprehension or mistakes of the occupant; it was

sufficient that there was a personal responsibility for the taxes in order to make it his duty to assess the land as seated. There was in fact an acre and a half in actual tillage, a *nucleus* sufficient, when accompanied by residence or vacant land, to constitute a title by improvement; and it was entirely sufficient to give a particular denomination for purposes of assessment. The cause was therefore left to the jury on its true principles.

Judgment affirmed.