## Mitchell *against* Bratton.

If one enter upon and take possession of part of a tract of unseated land, with or without title, and designate his claim by marks on the ground, such part of the tract thus claimed and occupied thereby becomes seated, and the residue of it still remains unseated, and liable to be sold as such for the payment of taxes.

ERROR to the Common Pleas of *Mifflin* county.

This was an action of ejectment by George Mitchell against Charles Bratton and James Bratton, for a tract of land in which the plaintiff's title was founded upon an assessment and sale of the land as unseated, in 1822, by the treasurer of Mifflin county, as the property of Frederick Lazarus. The only point in the cause of any consequence arose out of the following instruction of the court below to the jury:

WOODWARD (President). The residue of the case relates to the settlement made within the lines of Frederick Lazarus by "young Sailor Billy Bratton." The evidence is that he went on the land in the year 1819, built a house and lived there two, three, or four years, when he left, and Christopher Landis came in, who has lived there ever since, extending his improvements according to his means. James M'Kinstry said, on cross-examination, that Bratton built there under M'Donald and Baird; and after the defendants had shown this settlement and residence by Bratton, the plaintiff showed a warrant to James M'Donald for 30 acres, dated the 28th May 1817. It would seem from a draft of Michael M. Monahon, and the testimony of Andrew Bratton, that a survey of 30 acres was made in pursuance of this warrant wholly within the lines of Frederick Lazarus, but never returned. The entry and settlement of Bratton were made within the lines of these 30 acres, and the plaintiffs insist that, as to all of the Lazarus tract, without the lines of the 30 acres, it is to be regarded as unseated land, and might be sold for taxes, and did pass by the sale that was made. It is said that the case of *Campbell* v. *Wilson*, (1 *Watts* 503), rules this point. There are points of resemblance between that case and this, but there are also substantial differences. In that case the settler not only claimed by designated boundaries, but returned the land he claimed for assessment, and actually paid the taxes on it. The residue only of the original tract was sold, and it was held that the purchaser could hold this residue. But in the case before us the evidence is not very clear that Bratton limited his claim to the boundaries assigned to the void warrant to M'Donald; but if you are satisfied that he did so limit his claim, there is no evidence of his payment of any taxes on his 30 acres,

[Mitchell v. Bratton.]

nor of any assessment of those 30 acres to him, Landis, or any other person, but, on the contrary, the *whole* of the Frederick Lazarus tract has been assessed and taxed ever since, without regard to the M'Donald warrant and survey.

Now the principle of *Campbell* v. *Wilson* is, that double burthens are not to be imposed on a settler who claims less than a whole tract, and pays taxes on what he claims; as would be done if he were also compelled to pay the taxes assessed on the whole tract. This principle, most sound and just, cannot be applied to the facts of this case. The general rule is, that the assessor is to assess each tract of land within his district to the occupier. For this purpose he is furnished or may be furnished by the commissioners with that description of surveyed lands which the deputy-surveyor is bound to return to them. But if he find the occupier claiming less than the whole tract, and he assess him with so much only as he claims by known boundaries, he may then return the residue of the tract as unseated.

From the moment Bratton settled on the Lazarus tract, he became chargeable with the public taxes assessed upon it; and inasmuch as he did not return for taxation and pay for the 30 acres he claimed, if indeed he limited himself to those 30 acres, the principle of *Campbell* v. *Wilson* does not aid the sale that was made. He made it a seated tract, and it could not be sold as unseated for taxes assessed after he was in possession. He was liable to pay all the taxes assessed against Frederick R. Lazarus, and they should have been collected out of him. Nor has an intruder any reason to complain of this rule, for it is the rule in respect to the owner himself, who cannot exempt himself from personal liability for the payment of taxes for the whole of his land, by dividing off and abandoning part of it as worthless. *Patterson* v. *Blackmore*, (9 *Watts* 104). The rule ought not to be relaxed in favour of a mere trespasser, rather than the owner, and although the case of *Campbell* v. *Wilson* affords an exception to this rule, it is the only exception, and this case falls within the *rule* rather than the *exception*.

If on the whole the jury believe that Bratton was residing on the Frederick Lazarus tract before 1820, it was a seated tract, and could not be sold for taxes. And if you find there was such residence, your verdict should be for the defendants, notwithstanding you may believe Bratton claimed to the lines of the M'Donald survey, and no further.

*Banks* and *Benedict*, for plaintiff in error, referred to the former decisions of this case in 5 *Watts* 69; 7 *Watts* 113; 1 *Watts & Serg.* 310; and argued that the court clearly erred by instructing the jury that the occupancy and claim of part of a tract of land, under a different and independent title, gave character to the whole

[Mitchell v. Bratton.]

tract; and upon this point cited 1 *Watts* 503; 2 *Watts* 421; 5 *Watts* 441; 3 *Watts & Serg.* 238.

*Fisher*, for defendant in error, contended that the occupancy of any part of a tract of land took from it the character of unseated land, and made the person of the occupant liable for the taxes.

The opinion of the Court was delivered by

KENNEDY, J.—Upon a careful examination of the errors assigned in this case, we are of opinion that none of them have been sustained, excepting the fourth, which is an exception to the instruction given by the court to the jury in the conclusion of their charge. The instruction thus excepted to is in these words: "If, on the whole, the jury believe that Bratton was residing on the Frederick Lazarus tract before 1820, it was a seated tract, and could not be sold for taxes. And if you find there was such residence, your verdict should be for the defendants, notwithstanding you may believe Bratton claimed to the lines of the M'Donald survey, and no further." From the evidence as stated by the court in their charge to the jury, Bratton, "Young Sailor Billy," as he was called, had a house built on the Lazarus tract of land, and moved into it with his family in the year 1819, under James M'Donald, who, as it appeared on the trial, had obtained a warrant from the Land Office on the 28th of May 1817, for 30 acres, in pursuance of which he had a survey made by the deputy-surveyor in the month of July following, containing 36 acres, lying wholly within the lines of the Lazarus tract, which contained 390 acres and 154 perches, according to a survey made thereof and returned as early as May 1794, in pursuance of a warrant granted to F. Lazarus on the 26th of November 1793, for 400 acres. M'Donald never had his survey returned; but Bratton's residence and improvement were testified to have been made, according to the charge of the court, within the limits of it. The plaintiff claimed the land under the Lazarus warrant and survey, and a sale made thereof in 1822, as unseated land, for taxes assessed and remaining unpaid on it, for the years 1820 and 1821. The defendants claimed that, by reason of the settlement and improvements of Bratton, the whole of the Lazarus survey became seated, notwithstanding he had confined his possession and claim to that part of it situated within the lines of the M'Donald survey; and that Bratton's settlement, being made prior to and continued during the years for which the taxes had been assessed and the sale was made, the sale was therefore void, and could not entitle the plaintiff to recover: and to this effect the court below would seem to have instructed the jury. In this, however, we think that the court erred: 1. Because it could not be so in point of fact, that the whole of the Lazarus survey had thereby become seated; and, 2. Because there is no reason, founded either in justice or on any principle of public policy, why a person

[Mitchell v. Bratton.]

under such circumstances should not be permitted to limit the extent of his possession, and set bounds to his claim. That he should be allowed to do so, can work no injury to the real owner of the land, nor yet to the public, as regards the assessment and collection of taxes. On the contrary, it may be said to be advantageous to both, as it is calculated to relieve the owner from the payment of taxes for that portion of the tract which the intruder takes possession of, and at the same time it enables the public to collect the taxes assessed thereon from the settler, with more facility and in less time than could be done if it remained still unseated, without interposing any additional obstacles to the assessment and collection of taxes on the residue of the survey or tract as unseated. And beside, the settlement and improvement of wild land, in general, enhances the value of it, and thus tends to promote the interest of the owner, as also that of the public.

In order to illustrate the subject further, let us take the case of two interfering surveys, made under warrants of different dates, for different owners, where the owner of the junior warrant and survey settles with his family upon that part of his survey which interferes with the prior survey under the senior warrant, and remains there improving and claiming only to the extent of his own survey, without returning any portion of his claim to the assessors, or being assessed with taxes on account of it, and during the same time the whole of the land embraced within the elder survey is assessed with taxes as unseated, and sold afterwards as such by virtue of a warrant from the commissioners of the county for the non-payment thereof; could it with any propriety whatever, or the least show of reason, be said that that part of it with with which the junior survey did not interfere, was seated land, and therefore not liable to be sold? It seems to me clear that it could not, because it would be wholly repugnant to everything that was either done or intended by the owner of the junior warrant and survey in making his settlement and improvements. In short, it would be directly repugnant to the truth of the case, which is generally the true and only safe foundation and guide in the administration of justice. This doctrine was laid down and established in *Campbell* v. *Wilson*, (1 *Watts* 504). The party there, it is true, who settled on the land which had been appropriated previously, beside having the extent of his claim and possession designated by a survey and marks on the ground under a warrant granted to him by the Commonwealth, returned the same to the assessors, and paid the taxes assessed thereon; but that was not considered as essential in order to prevent the residue of the tract, previously appropriated, from becoming seated land; it was merely regarded as additional and corroborative evidence of the intention of the settler to make the land circumscribed by his survey the utmost extent of his possession and claim. And accordingly, in the late case of *Harper* v. *M'Keehan*, (3 *Watts & Serg.* 238), where

[Mitchell v. Bratton.]

a man of the name of Hamaker took possession of 94 acres 137 perches under a deed of conveyance from a Mary Ramsay, who does not appear to have had any right thereto whatever, describing the same by courses and distances, which were shown to be a part of a tract of land containing 437 acres 72 perches, surveyed many years before under a warrant granted by the Commonwealth to John Logue, but Hamaker does not appear to have ever made a return of the 94 acres 137 perches to the assessors, or to have been assessed with or paid taxes for the same; it was ruled that Hamaker's possession being limited by the courses and distances mentioned in his deed, did not give the character of seated land to the residue of the Logue survey, and that the residue was therefore still liable to be sold for taxes assessed on it as unseated land, if not paid.

It may therefore be taken as settled, that whenever a person enters and takes possession of unseated land belonging to another, either with or without colour of title, and has the full extent of what he means to take possession of set out and designated by lines marked on the ground, so that the same may be known and ascertained with certainty, and confines himself accordingly in making his improvements thereon within such lines, his possession shall not be taken or deemed to extend beyond his lines, so as to give the character of seated land to that which lies without. But if he enters generally, and continues to occupy and improve the land, after his entry, without designating or limiting his possession or claim by metes or bounds or lines made on the ground, his entry and possession will be considered as giving the character of seated land, for the purposes of taxation, to all lying within the bounds of the tract or survey, as previously designated, into which he has entered.

Judgment reversed, and a *venire de novo* awarded.