# Jackson *versus* Sassaman.

An executor to whom a discretionary power is given to sell lands, which are devised to another, is not liable for the taxes assessed upon the land prior to the sale.

Nor is he liable to his vendee where the land was sold for such taxes, upon a warranty in his deed against encumbrances done or suffered by himself.

Where an adjoining owner clears over three or four acres upon a tract of land and cultivates it, with a full knowledge of the division lines between the two tracts, and does no act to indicate his intention to limit his claim to a part of the tract, to the exclusion of the residue, the whole tract thus cleared over upon becomes seated, and is not liable to be sold as unseated land.

ERROR to the Common Pleas of *Huntingdon county.*

This was an action of ejectment brought by George Jackson against the executors of Peter Sassaman, and others, to recover possession of a tract of land, containing 393 acres and 55 perches, situate in Jackson, formerly Barre township, Huntingdon county, surveyed on a warrant to George Runnel, dated January 21st, 1794; surveyed 17th May, 1794, and returned 23d of February, 1801. The plaintiff claimed upon a tax title, and deed from the treasurer of Huntingdon county. The evidence showed assessment of this tract, as unseated land, for the year 1845, county tax 55 cents, state tax $1.18, assessed in March, and returned about 1st of April, 1845; and for the year 1846, county tax 98 cents, and

state tax $1.18, assessed in February or March, and returned about the last of March, 1846; and sale of same June 12th, 1848, by Isaac Neff, treasurer of said county, to George Jackson, the plaintiff, for $55; in pursuance of which sale, deed dated 14th June, 1848, acknowledged 23d August, 1848, was made and lifted, and bond given for balance of purchase-money.

The defendants showed a regular chain of title from the warrantee to Christian Picoli, who made his last will and testament in writing, dated the 13th January, 1844, and proved the 6th February, 1844, containing power to his executors to sell the same. And a deed from Samuel Hess, the executor of Picoli, dated 27th March, 1847, to Peter Sassaman. The will of Picoli contained the following clauses:—

" Item 2d. If my personal property should be insufficient to pay my debts, it is my will that so much of my meadow lying east of Pine Grove Mills be sold, to pay the balance of said debts; or if my executors should find it to the advantage of my estate to sell one of my lots and buildings thereon erected, in Pine Grove, or should they think it more advantageous *to sell my land in Barre township, Huntingdon county, I allow them to do so.*

" Item 3d. I give and bequeath to my two brothers, Andrew Picoli and Simon Picoli, the residue of my estate, to be divided as they may think proper.

" Item 4th. I order and direct, that my executors, hereinafter mentioned, or the survivor of them, shall, as soon as they think proper for the advantage of the estate, to sell and dispose of the residue of my real estate, for the best prices that can be gotten for the same;" authorizing them to execute such deeds or assurances as may be requisite or necessary.

The deed of the executor to Sassaman contained a covenant against any encumbrances done or suffered by the executor. They also showed the will of Peter Sassaman, dated 11th February, 1852, proved the 22d March, 1852, and in which Joseph Sassaman and Michael Flesher, two of the defendants in this suit, were appointed his executors.

The defendants, to avoid the sale for taxes, contended that the land was seated at the time the taxes for which it was sold were assessed. That John Rudy, who owned the adjoining tract and who came there in 1820, finding one of his fields extending over into this Runnel tract, continued to extend this clearing over from time to time until it embraced some three or four acres in 1845, when the taxes were laid. That during the years 1845 and 1846, the parts thus cleared over were cultivated and grain raised upon them, out of which the taxes could have been levied. That Rudy did not clear over by mistake, but knew during the whole time where the line was, and that his clearing and cultivation was beyond his own line and upon the Runnel survey.

[Jackson *v.* Sassaman.]

The plaintiff alleged that such clearing over by an intruder would not give the character of seated land to the whole tract; that he had no intention to extend his claim on to the Runnel survey; and that he relinquished all within its lines to Sassaman after his purchase.

On the trial in the court below, Samuel Hess, the executor of Picoli, was offered as a witness by the defendants to prove that grain was raised upon this clearing in 1845. He was objected to by the plaintiff as incompetent, on the ground of interest by reason of his covenant in the deed to Sassaman.

The court overruled the objection, and at the instance of plaintiff's counsel sealed a bill of exceptions.

The court below (TAYLOR, P. J.) instructed the jury, *inter alia* :—

" Was there sufficient personal property on the premises, when the taxes for both years were assessed, out of which the taxes might have been levied ?

" It is not disputed that there was grain raised upon the tract in 1846; sufficient, probably, to have paid the taxes of that year. The question is, was there in 1845 ? It is necessary, in order to make out the defence, that it be made to appear that there was property there when both taxes were assessed. If there was, whether the property was in the possession of an intruder, or of one who would be personally responsible, it would be sufficient to relieve the land from liability to sale : Milliken *v.* Benedict, 8 *Barr* 175. And the fifth point of defendant's counsel is here answered in the affirmative.

" Was there, then, personal property on the tract, when the tax of 1845 was assessed? In other words, was there a crop harvested that year, out of which the taxes might have been levied ? And this is the only question in the case. If this has not been shown, the defence has failed, and the plaintiff is entitled to recover. If it has been, your verdict should be for defendants. And the case is submitted upon the evidence bearing upon this question of fact."

The jury found for the defendants, and judgment was entered upon the verdict.

The defendants thereupon purchased this writ, and assigned here the admission of Hess as a witness, and the charge of the court, for error.

*Scott* and *Campbell*, for plaintiff in error.—The 13th section of the Act of 24th February, 1834, vested the freehold in the executor, as if it had been devised to him to be sold, and it became his duty to pay the taxes. The failure to pay these taxes would be such a breach of his covenant as would render him liable if the

[Jackson v. Sassaman.]

plaintiff recovered: 3 *P. Wms.* 215; 2 *Atk.* 406; How v. Burch-field, 3 *East* 491; Cavany v. Pulteny, 2 *Vesey, Jr.* 544.

2d. Prior to Act of 12th April, 1842, section 21 (*Pamph. L.* 266), the question of, whether a clearing over upon an unseated tract of land gave to it the character of seated land, depended upon the *quantity* cleared, and not upon the *intention* of the party clearing: Shaeffer v. McCabe, 2 *Watts* 421; Fish v. Brown, 5 *Watts* 441.

The primary object of the legislature is to charge the person and not the land. But even then it was held, that the occupation of part of an unseated tract of land, which is defined by lines marked upon the ground, and held under an independent or adverse title, will not affect a treasurer's sale of the residue for payment of taxes: Harper v. McKeehan, 3 *W. & S.* 238; Foster v. McDivit, 5 *W. & S.* 359.

And in Mitchell v. Brattan, 5 *W. & S.* 451, it is held, " that if one enter upon and take possession of part of a tract of unseated land, *with or without title*, and designate his claim by marks on the ground, such part of the tract thus claimed and occupied, thereby becomes seated, and the residue of it still remains unseated, and liable to be sold as such for payment of taxes. Finally, in Ellis v. Hall, 7 *Harris* 296, a case arising after the passage of the Act of 12th April, 1842, the *intention* of the *intruder* is recognised as limiting the extent of his personal responsibility.

*Wilson, Petriken,* and *McAllister,* for defendants in error.—1. Had the real estate been devised to the executors to be sold, it is not certain that the executors would have been in any default. The duty of paying the taxes of 1845 devolved upon Sassaman. But the will did not work a conversion of the real estate. The real estate was devised to his brothers, and only a *discretionary* power given to his executors to sell: Blight v. The Manufacturers' and Merchants' Bank, 10 *Barr* 131; 1 *Harris* 262; 2 *Id.* 445; 9 *Id.* 398–401.

2. On the second error they cited Ellis v. Hall, 7 *Harris* 296; Campbell v. Wilson, 1 *W.* 503; Shaeffer v. McCabe, 2 *Id.* 422.

The opinion of the court was delivered by

KNOX, J.—There was no error in admitting Samuel Hess as a witness. The discretionary power given to the executors to sell the real estate did not convert it into personalty; and, therefore, it passed, upon the death of Christian Picoli, to his devisees, whose duty it was to pay the taxes assessed prior to the sale to Peter Sassaman. The taxes for the year 1846 were assessed subsequent to the purchase by Sassaman, and consequently were not included in the covenant against incumbrances. The executor had no

[Jackson *v.* Sassaman.]

interest in the result of the action, and was properly admitted as a witness.

The disputed question of fact upon the trial was whether the tract in controversy was or was not seated at the time it was assessed as unseated for the taxes of 1845 or 1846.

It was clearly established by the evidence that between three and four acres of the tract had been cleared and cultivated before any part of the taxes, for which the land was sold, were assessed, and the jury found the fact that there was grain sufficient to have paid the taxes raised upon the tract for the years 1845 and 1846. It appeared that the clearing was done by the owner of an adjoining tract with a full knowledge of the lines, but without any intention of appropriating to his own use the entire tract, or of denying the title of Doctor Picoli. The Court of Common Pleas instructed the jury that, as the cultivation was by an intruder, who did not intend to appropriate to his own use the whole tract, only so much of the tract was seated as was actually cleared and cultivated. But the jury were further instructed that, if they believed, from the evidence, that sufficient grain was raised upon the tract, during the years for which the taxes were assessed, to have paid them, the tract could not be sold as unseated for non-payment of taxes. Of this instruction the plaintiff in error complains. Conceding the correctness of the first branch of the charge, it would be difficult to sustain the last proposition; for, if the mere intention of the intruder is the criterion by which we are to determine whether a tract of land is seated or unseated, we can scarcely say that personal property, found upon the portion of a tract intended to be appropriated, can be applied to the payment of the taxes of the entire tract. It is very clear that, if the intruder is not liable for the taxes assessed upon the whole tract, his property, though found upon a part of the tract, cannot be taken to pay the whole tax assessed; and it is equally clear that, if there is a personal responsibility for the taxes of the whole tract, its character is changed from an unseated to a seated tract of land.

But, is it true that where an intruder enters upon a tract of unseated land, clears and cultivates a part of it, without any intention of appropriating the residue, that he is only liable for the taxes of the part cleared and cultivated by him, and that the remainder of the tract remains unseated, and may be assessed and sold as such?

To sustain this proposition, the case of Ellis *v.* Hall, 7 *Harris* 292, is relied upon. A careful examination of that case, however, will show that it is not an authority for the doctrine asserted by the plaintiff in error and ruled by the Common Pleas. In Ellis *v.* Hall the tract was sold for taxes assessed for the years 1842 and 1843. To avoid the sale it was shown, that prior to the year 1833, between three and four acres had been cleared upon the tract by

[Jackson v. Sassaman.]

a man by the name of Thomas. How he or his successor, one Thatcher, was in possession, whether as intruders or as tenants, did not appear. But it was distinctly shown that for the years for which the assessment was made under which the sale took place, the tract was in possession of a tenant of the owner under an improving lease, who resided upon an adjoining tract, and who used the cleared part of the tract in dispute either for raising grain or grass. It further appeared that the tract upon which the tenant resided, also belonged to Mrs. Hall, the owner of the tract in dispute, and that Gardner, the tenant, knew the line between the two tracts, and that in the year 1839, or prior thereto, he had in making a clearing upon the tract upon which he resided, extended it over upon the tract in dispute to the extent of about one acre. Upon this state of facts, President CONYNGHAM instructed the jury that the tract was seated, and his instruction was assigned for error and affirmed in this court. Upon this branch of the case all that was necessary to decide in order to affirm the judgment was, that the improvement of part of a tract of land by a tenant of the owner, under a lease for the whole, makes the whole tract seated. This is an undoubted proposition, and upon it and upon the question whether a tract divided by a county line retained its entirety, the case depended. True, it was said by the judge who delivered the opinion of the court, that where the improvement was made by an intruder, his liability for taxes would be limited to the amount of his claim, and for this Campbell v. Wilson, 1 *Watts* 503, Harper v. McKeehan, 3 *W. & S.* 239, and Mitchell v. Bratton, 5 *W. & S.* 451, were cited. These authorities undoubtedly establish the doctrine, that where an intruder enters upon a tract of land and appropriates a portion of it to his own use, designating the part that he claims by lines distinctly marked upon the ground, he is only liable for the taxes of the part claimed by him, and the remainder of the tract may be sold as unseated. A tract of land may be severed by an intruder or by operation of law, and when its entirety is once destroyed, a part may be seated and a part unseated; but the intention of an intruder will not destroy its entirety, unless that intention is evidenced by an open and notorious act, such as marking the extent of his claim upon the ground, thereby indicating to the owner and to the public how far his possession extends.

In Campbell v. Wilson the tract contained 436 acres. Patterson, the intruder, had a house within the survey, but his claim was precisely designated by metes and bounds and only covered 100 acres of the tract, and for this he obtained a warrant from the Commonwealth and returned it to the assessor for taxation. It was held that this did not seat the entire tract. In Harper v. McKeehan the same rule was laid down, and for the reason that the part claimed by the occupier was distinctly shown by marked

[*Jackson v. Sassaman.*]

lines and designated boundaries; and so in Mitchell and Bratton the claim of the occupant, "Young Sailor Billy" as he was called, was defined by an unreturned survey made upon a previous warrant, and hence it was held that his residence and cultivation of that part did not seat the entire tract. The rule is so clearly stated by the late Mr. Justice KENNEDY in the case referred to, that I must be pardoned for extracting the following sentence from it.

"It may therefore," said that learned judge, "be taken as settled that wherever a person enters and takes possession of unseated land belonging to another, either with or without colour of title, and has the full extent of what he means to take possession of set out and designated by lines marked upon the ground, so that the same may be known and ascertained with certainty, and confines himself accordingly in making his improvements thereon within such lines, his possession shall not be taken or deemed to extent beyond his lines, so as to give the character of seated land to that which lies without. But if he enters generally and continues to occupy and improve the land after his entry, without designating or limiting his possession or claim by metes or bounds or lines made upon the ground, his entry and possession will be considered as giving the character of seated land for the purposes of taxation, to all lying within the bounds of the tract or survey, as previously designated, into which he has entered."

In Sheaffer *v.* McCabe, 2 *Watts* 421, the owner of an adjoining tract had extended his clearing so as to include several acres of the tract in dispute, and this was held to seat the whole tract, whether the clearing over was accidental or otherwise. This case was recognised in Fish *v.* Brown, 5 *Watts* 441, and followed by Rosenberger *v.* Schall, 7 *Watts* 390, which was a case where an adjoining occupant had extended his clearing over the line by mistake.

The Act of 12th April, 1842, declared, that "no clearing over by mistake shall ever be deemed sufficient to render land seated." But this in nowise weakens the authority of the above cases where the clearing over is wilful and designed.

In the case under consideration the clearing over was not accidental, but with a full knowledge of the division line between the two tracts, and as no act was done by the intruder indicating his intention to claim a part of the tract to the exclusion of the residue, its entirety was not destroyed. The whole tract became seated, and its assessment and sale as unseated, gave no title to the purchaser.

If there was error in the charge of the court below, it was against the defendant, and as the verdict was in his favour, there is no ground for reversal.

Judgment affirmed.