## Jackson *et al. versus* Stoetzel.

1. The usual way of seating wild lands is first, by residence, and second, by cultivation, in such a manner as to indicate permanent occupation. Where however, land is not capable of residence or cultivation, it may be seated by the derivation of profits therefrom by the owner.

2. To enable a mere trespasser to seat a tract of land by enjoyment of profits, a permanent use of the land is necessary. A mere digging of coals in the winter, with an abandonment of the property for the rest of the year, is not sufficient and will not invalidate a sale for taxes.

June 13th 1878. Before AGNEW, C. J., MERCUR, GORDON, PAXSON, WOODWARD and TRUNKEY, JJ. SHARSWOOD, J., absent.

Error to the Court of Common Pleas of *Columbia county :* Of May Term 1878, No. 62.

Ejectment by John A. Jackson and Elizabeth his wife, in right of said wife ; Charles D. Herron and Jane, his wife, in right of said wife; Charles J. Tower and Robert M. Cummings against Eli Stoetzel, for a tract of land in Conyngham township, Columbia county.

The material facts are stated in the opinion of this court.

At the trial the plaintiff submitted the following points, to which the answer of the court, Elwell, P. J., is appended.

7. That the occupancy of a tract of land unfit for residence and cultivation, by the erection of buildings thereon, and the opening of a coal mine, and the mining of coal, the construction of a road to the premises, and the sale of coal to the amount of at least a hundred tons per annum, to the public in the neighborhood, during a period of fifty years, covering the years for which the tax sales were made, is such a seating of the tract of land as would invalidate a sale for taxes ; and also,

8. That, if the jury believe the evidence of John Kline, that he went on the land nearly fifty years ago, making a claim on it, begun to take out coal, erected buildings thereon, continued regularly thereafter to mine coal, and maintained possession to about 1860, also paying all taxes on the land demanded of him, after which last date the land in dispute was occupied by the lessees of the defendant, then the land was not subject to a tax sale, and no title was acquired by the purchaser.

Ans. "If John Kline had been the owner of this property, if he had had any color of title to it, then I would hold that the character of the occupancy stated by him and the other witnesses would be sufficient to the making of a seated tract; but, as I look upon the evidence, his entries from year to year and time to time were but so many repeated trespasses; he had no occupancy that would have given him a title under the Statute of Limitations as against the Tower heirs. * * * And, although by the authority of 5 P. F. Smith, in Fellows & Co., if Kline had been assessed with taxes he

[Jackson v. Stoetzel.]

might perhaps have been compelled to pay them—possibly personally an assessment might have been collected—nevertheless, that of itself would not render the tract a seated tract."

The defendant, among others, submitted the following point, which the court affirmed.

That the evidence of the plaintiffs upon the possession and use of the land of John Kline and others is not sufficient to establish a seating of the land at any time, and particularly not during the years and at the times assessments were made on which the tax sales were had.

The verdict was for defendant, and after judgment the plaintiffs took this writ; their sixth and seventh assignments of error being respectively to the above points.

*John G. Freeze* and *A. J. Dietrick*, for plaintiffs in error.—A tract of wild land becomes seated whenever it is so far occupied as to make the owners or occupants personally chargeable with the taxes; and the character of the occupancy rendering the owners or occupants liable is when the owner or occupant enters upon the tract with the intention to improve it and derive profit from it: Sheaffer *v.* McKabe, 2 Watts 421; Kennedy *v.* Daily, 6 Id. 272; Foster *v.* McDivit, 9 Id. 341; Ellis *v.* Hall, 7 Harris 292; Rosenburger *v.* Schull, 7 Watts 393; Greenough *v.* Fulton Coal Co., 24 P. F. Smith 496. An entry upon an unseated tract of land by any one, whether as an intruder or under the title of the owner, either for the purpose of residence or for cultivation, makes the tract seated and prevents a sale for taxes: Campbell *v.* Wilson, 1 Watts 504; Sheaffer *v.* McKabe, 2 Id. 421; Kennedy *v.* Daily, 6 Id. 269; Rosenburger *v.* Schull, 7 Id. 393; Mitchell *v.* Bratton, 5 W. & S. 451; Wallace *v.* Scott, 7 Id. 245; Wilson *v.* Watterson, 4 Barr 214; Jackson *v.* Sassaman, 5 Casey 112; Lackawanna Iron Co., *v.* Fales, 5 P. E. Smith 90; Jackson *v.* Flesher, 1 Grant 459; Greenough *v.* The Fulton Coal Co., 24 P. F. Smith 486. The court should have left the question whether the land was seated or not to the jury: Rosenburger *v.* Schull, 7 Watts 393.

*George F. Baer* and *C. R. Buckalew*, for defendant in error.—The use of the land by Kline and others, was at no time anything else than a series of trespasses, and the structures which he placed upon the land, were plainly intended solely for temporary purposes. During the years for whose taxes the lands were sold, it is difficult to say that he maintained even this character of possession. Land only ceases to be unseated when it is actually occupied with a view to permanent use as the property of the occupant: Wallace *v.* Scott, 7 W. & S. 249. Actual residence indeed is not indispensable where profits are derived from the land, but the occupancy must still be with a view to permanent ownership, and the improvements made

in such a way as to furnish upon the land, the means of making and levying the taxes by distress, and arresting the attention of the assessor so as to require him to return it seated : Greenough *v.* Fulton Coal Co., 24 P. F. Smith 496 ; McArthur *v.* Kitchen, 27 Id. 62 ; Kennedy *v.* Daily, 6 Watts 272 ; Scheaffer *v.* McKabe, 2 Id. 421 ; Foster *v.* McDivit, 9 Id. 341 ; Rosenburger *v.* Schull, 7 Id. 393 ; Wallace *v.* Scott, 7 W. & S. 248 ; Jackson *v.* Sassaman, 5 Casey 106 ; Jackson *v.* Flesher, 1 Grant 459. In Campbell *v.* Wilson, 1 Watts 503, intention of permanent occupancy was shown by actual residence, and in Biddle *v.* Noble, 18 P. F. Smith 279, and Mitchell *v.* Bratton, 5 W. & S. 451, by the fixing of boundaries designated by the actual marks on the ground.

Mr. Justice PAXSON delivered the opinion of the court, June 25th 1878.

This was an action of ejectment to recover the possession of four hundred and forty-one acres of land, known as the Ebenezer Branham tract. The plaintiffs showed that the legal title from the Commonwealth was vested in them. The defendant was in possession, and claimed title by virtue of three tax-sales. The only material question in the case is, whether the land was unseated at the time of the tax-sale in 1854. It was sold at that time for the taxes assessed for 1851 and 1852. The tract was assessed as unseated. The plaintiffs called a number of witnesses for the purpose of showing that it was seated. The court below, in answer to the 7th and 8th points of plaintiffs, and the 1st point of defendant, charged the jury that the evidence was not sufficient to seat the tract. This ruling forms the subject of the 6th and 7th assignments of error.

The facts testified to by the plaintiff's witnesses are substantially as follows : About fifty years ago one John Kline entered upon the tract and opened a coal mine. About the same time he constructed a shanty as a shelter for the men. The vein proved faulty, and at this point was abandoned, as was also the shanty. The latter was afterwards destroyed. Some time subsequently, but how long the evidence does not disclose, Kline made another opening on the same tract about three-quarters of a mile from the first one, and commenced taking out coal. Another log shanty, 8×17, was put up as a shelter for the men. Later a second shanty was put up for sleeping in, 12×16, covered with boards, and the first shanty was used as a stable, where, the evidence shows, a single horse or mule were kept a portion of the time. Neither of the cabins was ever used as a residence; one of the witnesses says: "Nobody could live there the way the shanty was." No one ever lived on the tract. The men came there on Monday and returned to their homes the last of the week. The coal that was taken out was exclusively for the farmers and neighbors ; none of it was ever shipped to market. The highest amount taken out in a year

[Jackson *v.* Stoetzel.]

appears to have been about 100 tons. The opening was small; the neighboring farmers took out coal there, although the mine was originally opened by Kline and was called Kline's mine. Kline, however, had no title, nor even a color of right. He makes no such claim in his testimony. He does say that the first shanty was built "for an improvement, and to make an application," as well as for a shelter for his men. This was never followed up, and the shanty was abandoned soon after its erection, as has been before stated. After Kline quit working the mine he leased it to several other parties successively, who appear to have worked it in the same manner and to the same extent. What rent he was to get does not appear. On one occasion he received $15 as his share of the coal.

The mining was done mostly in the winter. Some work was done in the fall or late in the summer.

Are these facts sufficient to seat the tract? There are two modes by which wild lands are usually seated, viz. : 1. By residing on the land; and 2. By cultivation in such manner as to indicate a permanent occupation of it. And residence or cultivation of the character indicated, even by an intruder, is sufficient. Nothing is better settled than this, that an entry upon an unseated tract of land by any one, whether as an intruder or under the title of the owner, either for the purpose of residence or for cultivation, makes the tract seated and prevents a sale for taxes: Biddle *v.* Noble, 18 P. F. Smith 279; Campbell *v.* Wilson, 1 Watts 504; Shaeffer *v.* McKabe, 2 Id. 421; Kennedy *v.* Daily, 6 Id. 269; Rosenberger *v.* Schull, 7 Id. 390; Mitchell *v.* Bratton, 5 W. & S. 451; Wallace *v.* Scott, 7 Id. 248; Wilson *v.* Watterson, 4 Barr 214; Jackson *v.* Sassaman, 5 Casey 112; Lackawanna Iron Co. *v.* Fales, 5 P. F. Smith 90; Jackson *v.* Flesher, 1 Grant 459; Greenough *v.* The Fulton Coal Co., 24 P. F. Smith 486. In some instances land may be seated without either residence or cultivation. This must be so or some lands could never be seated, as they are unsuited to a residence and incapable of cultivation, yet possessing value for their mineral deposits. It has therefore been said that where the owner derives a profit from the land it cannot be said to be unseated. This principle appears to have been recognised in Stokely *v.* Boner, 10 S. & R. 254; Harberson *v.* Jack, 2 Watts 125; Kennedy *v.* Daily, 6 Id. 269. In the cases referred to the word profits was evidently used as the equivalent for cultivation, as it was manifestly profits from cultivation that was in the mind of the court. In the later case of Lackawanna Iron Co. *v.* Fales, 5 P. F. Smith 90, the jury were instructed by the late Judge Conyngham that "a tract may become seated without permanent residence and without cultivation through the raising of grain and crops, either of which would clearly make it seated. Some tracts may be entirely unfitted for cultivation, or for a permanent dwelling-place, and yet they may become seated

6 NORRIS—20

by a personal use of them in the only way in which they can be used." This, with other portions of the charge, was assigned for error in this court and affirmed.

It is manifest this tract was not seated by either residence or cultivation. It would only be seated, if seated at all, by the acts of Kline and the neighbors and farmers taking out a limited supply of coal for domestic purposes for a series of years. It may be that if the owner had used the land as it was used by Kline, it would have seated the tract. But to enable a mere trespasser to seat a tract by enjoyment of profits, a permanent use of the land is necessary. A mere digging of coal in the winter, with an abandonment of the property during the rest of the season, would not be sufficient. The entry of Kline each season was, as was well said by the learned judge below, merely repeated trespasses. There is nothing to show that he entered under color of title or claim of ownership, and with a view to a permanent occupation of the property, which were held to be essential in the Lackawanna Iron Co. *v.* Fales, *supra.* Suppose Kline and the neighbors who took the coal had resorted to the tract each winter for their supply of fire-wood, that Kline had erected a shanty for the choppers to sleep in and to protect them from the rain, and had kept a few cords on hand for sale, can it be said that this act of trespass, however frequently repeated, would have seated the tract? Yet in what essential feature does it differ from the case in hand? If a tract is to be seated by such evidence as this, I am unable to see why wild land may not be seated by burning charcoal on it each winter for fifty years, or by a sugar camp in the spring, provided anything in the shape of a cabin is erected to keep off the rain. The distinction between the effect of acts by an owner and by an intruder, was clearly pointed out by the learned judge of the court below in his answer to the defendant's point. He said : " If John Kline had been the owner, if he had had any color of title to it, then I would hold that the character of the occupancy stated by him and the other witnesses, would be sufficient to the making of a seated tract." This distinction is also recognised in Lackawanna Iron Co. *v.* Fales, where it was said of a trespasser by the court below and affirmed here : "we say it must be the going on under color of title, with an evident claim of ownership, and a view to a permanent occupation of the property, and occupying and using it continuously in the way its capabilities render it apparently most proper, that will make it seated." There was nothing upon this tract to indicate its permanent use by any one. There were no operations of any kind carried on there during the greater part of the year. There were no general works ; no colliery ; no tenant-houses—nothing but a hole in the ground, out of which the neighbors took coal, which they knew did not belong to them, and a miserable shanty, unfit for occupation as a residence, and which was used only as a shelter for the men at night for a portion of the year.

[Jackson v. Stoetzel.]

We think the court below was right in holding that the evidence was insufficient to seat the tract. The facts not being disputed, it was for the court to pass upon their effect. The remaining assignments need not be discussed. They disclose no error.

Judgment affirmed.

Chief Justice AGNEW filed a dissenting opinion.