IN

# THE SUPREME COURT

OF

# PENNSYLVANIA.

---

## NORTHERN DISTRICT—SUNBURY, 1873.

---

## McReynolds *et al. versus* Longenberger *et al.*

1. The Act of March 13th 1815, sect. 4 (Unseated Lands), does not cure the want of *any* assessment.

2. There must be an assessment, regular or irregular, for the particular year, for the taxes of which the land is sold.

3. Under Act of April 12th 1842, sect. 21 (Unseated Lands), papers in the commissioners' office will support the fact of an assessment, which before that act *per se* would not be evidence of an assessment.

4. There may be no actual assessment in evidence, but there may be evidence, by records and papers in the commissioners' office from which an assessment may be inferred.

5. Ambiguous entries in a book relating to sales of unseated lands, are evidence for the jury on the question whether land sold for taxes had been assessed.

6. Heft v. Gephart, 15 P. F. Smith 510, examined and explained. Greenough v. Fulton Coal Co., 24 P. F. Smith 486 ; Hess v. Herrington, 23 P. F. Smith 438 ; McReynolds v. Longenberger, 7 P. F. Smith 13, recognised.

March 31st 1874. Before AGNEW, C. J., SHARSWOOD, MERCUR and GORDON, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Columbia county:* of September Term 1873, No. 5.

This was an action of ejectment, brought August 1st 1873, for a tract of 364 acres of land in Beaver township, formerly Mifflin township, Columbia county. When the cause was tried December 11th 1872, before Elwell, P. J., by various substitutions of the original parties, William Longenberger and James McAllarney, executors of George Longenberger, deceased, and S. P. Wolverton

(13)

[McReynolds *v.* Longenberger.]

were plaintiffs, and Hugh W. McReynolds and Cyrus J. Bower and other heirs of Henry Bower, deceased, were defendants.

The case had been tried·before, the judgment reversed and a new trial awarded by the Supreme Court; it is reported in 7 P. F. Smith 13.

The land in controversy was surveyed on the 8th of July 1794 as 364 acres, on a warrant granted August 23d 1793, to Catharine Longenberger; on the 6th of September 1794, a patent for the same tract was issued to James Wilson. This land was sold by the sheriff in 1801 on an execution against Wilson, to Jacob Bower, upon whose death the title to the land passed to his son Henry Bower as his heir at law. By divers conveyances two-thirds of the title passed to H. W. McReynolds, the other third remaining in the heirs of·Henry Bower, deceased.

The plaintiffs claimed the land under two sales for taxes to George A. Frick made in 1820 and 1822.

There were a number of subordinate questions considered and ruled on the trial in the court below. The question considered and decided in the Supreme Court was, whether there was suffi· cient evidence that the county commissioners had charged this land with the taxes for which it was sold. After some preliminary evidence, the plaintiffs called William Krigbaum, who testified:

"I am clerk to the commissioners of Columbia county; the book I hold headed, where now open, 'Triennial Assessment, Mifflin township, 1817,' is from the commissioners' office; it is the assessment book for Mifflin, 1817; both the triennial and yearly assessment, as I understand it. There are two warrants in it, one of 1816, and also in spring of 1817; I would call this the corrected triennial assessment; I have been clerk to the commissioners six years."

Entries: "Warrantee, Catharine Longenberger; acres, 364; rate, 1; owner, G. Long; rate, 364.—51."

Bound book handed to witness: "This book has the lists of the treasurer's sales for the taxes of 1818 and 1819; the sales made in 1820; I call this a transcript of unseated lands; it must be the commissioners' transcript; that is my view of it; the book came from the commissioners' office."

Being cross-examined he said:—

"I don't know the handwriting in this book, on this page headed "Return of Unseated Land," made by the assessor of Mifflin township, as triennial assessment, 1817; it does not appear to me to be the Treasurer's Sale Book, such as we have in the office now; it appears to me to be the book put into the treasurer's hands to collect the taxes. [The heading in the back part of the book turned sidewise, shown witness.] This is the sale of unseated lands for years 1818 and 1819; sold June 12th 1820, for taxes; these purport to be entries of sales made by the treasurer; I don't

[McReynolds *v.* Longenberger.]

know the handwriting of the sales or of the entries in this part of the book; don't know anything about the book, only what appears upon it; so far as I know, the office of the treasurer and the commissioners have been kept together; they are now kept together; we have now in the office of the commissioners all the records of the treasurer, so far as they are in existence; there may be some that I don't know anything about; the books are all kept in the same vault."

Plaintiffs offer the bound book from the commissioners' office for the purpose of showing the copy in their transcript book, of the return of unseated lands, made by the assessor of Mifflin township, at the triennial assessment of 1817, and the assessment of taxes upon the Catharine Longenberger tract in pursuance thereof: to be followed by evidence of a sale of the treasurer in pursuance of said assessment and a deed to the purchaser, &c.

The offer was objected to:

1. Because the book contained upon its face evidence that it is a book belonging to the treasurer and not to the commissioners.

2. Because before it can be given in evidence for the purpose of showing an assessment, it must appear to contain the work of the commissioners.

3. Evidence that the book was taken from an office which is both the treasurer's and commissioners' office is not sufficient.

4. Because it contains the record of road taxes of 1818, and there is no evidence of any action by the supervisors of the township relating to such taxation.

5. That a copy or transcript in a treasurer's book is not legal evidence of an assessment.

The offer was admitted, and a bill of exceptions sealed.

" Return of unseated land made by the assessor of Mifflin township, 1817:

| *Warrantee Names.* | *Owners.* | *Acres.* |
|---|---|---|
| Longenberger, Catharine. | G. Long. | 364 |

County Tax, 1817—51; Road Tax, 1817—58; County Tax, 1818—  ; Road Tax, 1818—58; County Tax, 1819—  ; Road, 1819—  ."

The witness further testified:—

" This book that I hold, and all the books now here, are from the commissioners' office; this purports to be the triennial assessment of 1820; it contains two warrants, one of Nov. 1819, and one of spring of 1820; it shows a return of unseated land as such. This is the annual assessment of Fishing Creek township for 1815, and Greenwood township for same year in the same book; contains the annual assessment of each year for each of these townships; no unseated lands assessed in these years in these townships; this is the annual assessment for Fishing Creek and Greenwood

25 P. F. SMITH—2

[McReynolds *v.* Longenberger.]

townships for 1816; no unseated land assessed in these books. This is triennial assessment of Fishing Creek and Greenwood townships for 1817. There is a list of unseated lands in Fishing Creek township of that year. This is another book; assessments of several townships marked together in this book.

"In the annual assessments for 1818–19 in Greenwood and Fishing Creek townships no unseated lands are mentioned. In the triennial assessment of 1820 for Fishing Creek township unseated lands are mentioned. In the annual assessment for Fishing Creek township for 1821, 1822, no unseated lands are mentioned. In 1823, triennial, there is a return of unseated land. In the annual assessment for Mifflin township for 1815 and 1816, no unseated lands are mentioned. The triennial assessment of 1817, before in evidence, returns unseated lands in Mifflin township. Annual assessment of 1818 and 1819, no unseated lands: 1820 triennial, return of unseated lands; annual assessment of 1821 and 1822; no unseated lands. Return of unseated lands in Mifflin for 1823. I call this book a transcript; it contains the list of land and the taxes carried out. The unbound book of assessments of Mifflin township of 1820 is the return of the unseated lands of Mifflin made by the assessor for 1820. This is the unbound transcript of unseated lands of Mifflin."

(The heading was "Return of unseated lands in Mifflin township, &c.")

"The bound book does not contain all the names that are in the unbound book. Those marked with a star in the unbound book are entered in the bound book.

The plaintiffs proposed to read the return of the assessment Mifflin township for 1820. Under the head of warrantee names, marked with a star: "Longenberger, Catharine;" under the head of acres, "216;" under the head of adjoiners, "A. Clark;" under the head of county tax for 1820, "$1.07;" under the head of county taxes for 1821, "53½ cts.," and from the bound book the heading as before stated. Warrantee names, Longenberger, Catharine, acres 216, adjoiners, A. Clark, county taxes $1.07; 1821, county taxes, 53½; remarks, G. A. Frick. Triennial assessment Mifflin township 1820. "Warrantee, Catharine Longenberger; acres, 216; adjoining, A. Clark; val. $327; taxes, $1.07." Also: the assessments of Fishing Creek and Greenwood townships for the purpose of showing the practice of the commissioners' office from 1815 to 1823, and the assessments of Mifflin township for the like purpose, and for the further purpose of showing the assessment of taxes on the Catharine Longenberger tract for the years 1817, '18, '19, '20, and '21.

Objected to by defendants.

1. That the books offered for the purpose of showing the practice

[McReynolds *v.* Longenberger.]

of the commissioners' office are not in the present state of the offer competent for such purpose.

2. The books offered for the purpose of showing assessments of the Catharine Longenberger tract are not competent evidence for the purpose of showing assessments for the years 1817 to 1821, nor are they competent evidence of the assessment of road tax.

The offer was admitted and bill of exceptions sealed.

The witness proceeded : " I am acting for the treasurer of Columbia county. The heading of that part of the (bound) book now open before me, on back part of book turned sidewise, is sale of unseated lands for years 1818 and 1819, made June 12th 1820, for taxes. Continued until the 19th. Expenses included in the purchase-money. This book was procured from the office of the commissioners and treasurer."

Plaintiffs offered to read from this book, under head of Mifflin township, for unseated land taxes for year 1818 and 1819, that which relates to the Catharine Longenberger tract, for the purpose of showing a sale of that tract by the treasurer, and to be followed by a deed from the treasurer under that sale duly acknowledged.

Defendants objected: 1. Because there has no such assessment been shown as would warrant a sale of the Catharine Longenberger tract for taxes in 1820. 2. That no sale was warranted at the time for the taxes purporting to be unpaid by the entry in the book offered in evidence.

The offer was admitted and a bill of exceptions sealed.

Entries : " 364. Longenberger, Catharine, Co. tax, 1.16 ; R. tax, 1.16 ; Total, 2.32. Ed. pd. sold $5.95. Purchaser, G. A. Frick. Deed. 10th July 1820. Deed, Wm. Wilson, treasurer of Columbia county, to Geo. A. Frick, for the Catharine Longenberger tract. Acknowledged 4th August 1820, in open court. Recites county tax, 1818, 58 cts. and 1819, 58 cts ; road tax 1818, 58 cts. ; 1819, 58 cts. In the whole, $2.32."

Plaintiffs offered deed 5th August 1822. Wm. Wilson, treasurer of Columbia county, to G. A. Frick, for Catharine Longenberger tract. Acknowledged in open court, 10th August 1822. Offered in connection with proof that the treasurer's sale book of 1822 cannot be found in the proper office. Recites county taxes, 1818, —, and 1819, —. Road tax for 1820, ½1.07, and 1821, 53½ cts. Sold. Geo. A. Frick, $5.23.

Defendants objected : 1. Because there is no such assessment as would warrant a sale by the treasurer. 2. No evidence of a sale made by the treasurer has been given. 3. Because no such taxes are shown to have been assessed and unpaid as recited in the deed ; the deed reciting that it was sold for road taxes.

The offer was received and a bill of exceptions sealed.

[McReynolds *v.* Longenberger.]

Wm. Krigbaum further testified: " I have searched for treasurer's sale book for 1822. Do not find it."

The plaintiffs then gave evidence tracing the title of the land in dispute to George Longenberger, John Fisher and George Miller; George Longenberger's will, directing his interest in the land to be sold by William Longenberger and James McAllarney, plaintiffs, his executors, and tracing the title to the other two-thirds to S. P. Wolverton, the other plaintiff.

The plaintiffs gave evidence for the purpose of showing that the recital in the treasurer's deed to Frick that the land was sold for the road tax of 1820 and 1821 was a mistake; also evidence for the purpose of showing title under the Statute of Limitations, and rested.

The defendants then gave evidence in answer to the plaintiff's case, amongst other things for the purpose of showing that the taxes for which the land had been sold, had been paid; and also showing the title as claimed by them.

Both parties submitted a number of points, which it is not important to give, the positions presented by them appearing in that part of the charge given below.

After stating the respective grounds of claim of the parties, Judge Elwell said :—

* * * " Under these instructions you will perceive that the validity of the tax sale of 1820 or that of 1822, or both, is the only proper subject for our consideration.

" By the statutes of this state unseated lands are made liable for their share of public taxes according to their value. As the owners may be non-residents or unknown, the policy has been to charge the lands themselves with the taxes, and to enforce payment by a sale of the lands charged. In order, however, to make a valid sale for taxes, certain requisites, without which no title will pass to the purchaser, are necessary. The land must have been unseated at the time of the assessment of the taxes. An assessment must have been made by competent authority, identifying the land assessed by the adjoiners, or otherwise, with reasonable certainty; the taxes must have been due and unpaid for one whole year before the sale; the land must have been sold by the treasurer of the county and his deed therefor must be acknowledged in open court. When all these requisites exist, and there is no redemption from the sale within two years, the title of the former owner is divested, and that of the purchaser becomes complete. But if either of them are absent no title passes by the sale. When land is assessed as unseated, the presumption is that that is its condition until the contrary is shown. When unseated lands are described, valued and returned by the assessor under a warrant from the county commissioners for that purpose, and the commissioners have charged them with taxes, an assessment has been made by

[McReynolds *v.* Longenberger.]

competent authority, and if the owners suffer such taxes to remain unpaid for one whole year, the treasurer, without a warrant from the commissioners, may make a sale and convey a good title to the purchaser. But the treasurer has no authority to make an assessment; he is, under the statute, merely an executive officer empowered to enforce by a sale charges duly made and ripe for such action, before his duty begins. There is no particular form or mode prescribed by law in which the books shall be kept and the assessments made. Each county may have a practice of its own. If the assessment is actually made, the manner of doing it is not material. In this county ·the books from the commissioners show, at least in regard to several townships, that for years 1815 and 1816 the unseated lands were not placed on the yearly assessments. The triennial assessment of 1814 is not to be found. In the triennial years 1817, 1820 and 1823, the unseated lands are found upon the assessment returned by the assessor. In the intermediate years between the triennial assessments, the unseated lands are not placed on the books containing the yearly assessments.

"Your attention is now directed particularly to the evidence upon which the plaintiffs rely to prove an assessment of taxes for the non-payment of which the treasurer's sale was made on the 12th of June, A. D. 1820.

"In the triennial assessment for Mifflin township for 1817 brought from the commissioners' office with the proper warrants of the commissioners to the assessors, among other tracts contain the following: Warrantee, Catharine Longenberger; acres, 364; rate, 1; owners, G. Long; rate, 364; —— 51.

"They have also given in evidence another book called here 'the bound book.' This book contains in the fore part, when held in the ordinary way, what purports to be a return of unseated lands made by the assessor of Mifflin township, 1817, charging this tract with taxes, to wit: Road tax 1818, 58 cents. You will have this book when you go out and will observe that there are no taxes charged on the preceding page of the same book for Mifflin township, and that by placing the figures indicating amounts of tax on the page where the Catharine Longenberger tract appears in corresponding columns with the preceding pages, the taxes charged would be, 1818, county tax, 58 cents, and 1819, 58 cents. In the back part of the book, turned sidewise, is what purports to be sale of unseated lands for years 1818 and 1819, made June 12th 1820. The entry there is, 364; Longenberger, Catharine; county tax, $1.16; road tax, $1.16; total, $2.32; sold, $5.94; purchaser, George A. Frick; deed. In regard to this book the evidence is, that it came from the commissioners' office; that the office of the commissioners and of the treasurer of the county is now and always has been, as far as known, in the same room; that the books of both offices are kept in the same vault. Mr.

[McReynolds *v.* Longenberger.]

Krigbaum, the present clerk of the commissioners, who has held that office for six years, calls the first part of the book the transcript of unseated lands, and the latter part the list of treasurer's sales; forming his judgment, however, upon no other fact than inspection of the books. Upon this state of facts I must submit to you to decide whether the taxes charged in what I call the first part of the book was the work of the county commissioners; whether it was in fact their unseated land book at that time, and the treasurer put his sale in the back part of it, or whether it was the book of the treasurer for the purposes of his office. If you find that it was the treasurer's book, and not that of the commissioners for the purpose of assessing and charging unseated lands with taxes, then you should reject it wholly from your consideration. If the entries charging taxes were not the work of the county commissioners, then there is no evidence to support the sale of 1820 by the treasurer, and the deed of that officer to George A. Frick of the 10th of July 1820, conveyed no title. But if you find that it was the commissioners' book in which they charged lands valued and returned by the assessors with taxes, the fact that the treasurer entered his sales in the back part of it ought not to destroy its force as evidence, and the sale made by the treasurer conveyed the title, unless the taxes had been paid before sale. The recitals in the deed of the treasurer of more taxes than appear to have been charged upon the books, does not vitiate the sale. If there were any taxes due more than one year, whether they were for county or road purposes, the sale was valid.

" In support of the sale and deed of the treasurer to Geo. A. Frick, dated August 5th 1822, the plaintiffs have given in evidence the triennial assessment of Mifflin township for 1820, by which it appears that the Catharine Longenberger tract was returned by its warrantee name, described as containing 216 acres, adjoining A. Clark, and was valued at $324. These entries are found in the book from the commissioners' office, called by the clerk ' the unbound book' of assessments of Mifflin township for 1820, being the return of unseated lands made by the assessor. In this book this tract, described as before stated, is charged under the head of county tax for 1820, $1.07, and under the head of county tax 1821, with 53½ cents, and in the bound book mentioned, under the head of unseated lands of Mifflin township, &c., the warrantee name, number of acres and taxes for the years 1820 and 1821, are entered the same as in the unbound book, with the addition, under the head of ' remarks,' of the name of George A. Frick. It appears that the treasurer's sale book of the sales made in 1822 is not to be found, but the deed of the treasurer recites such sale to George A. Frick, for the consideration of $5.23. It recites county taxes for 1818 and 1819 blank, and road tax for 1820, $1.07, and 1821, 53½ cents.

[McReynolds *v.* Longenberger.]

" We repeat in regard to this sale so far as regards these books in evidence purporting to charge this tract with taxes, that if they are merely the work of the treasurer they are no evidence of assessment and the sale was invalid. But if they are the books of the county commissioners, and the charge of taxes was their work, then the sale was valid and passed the title; provided it was made for the taxes thus charged and remaining unpaid, as I have before stated. I submit to you to determine.

"From the evidence before you whether the recital in the deed that the sale was made for road tax of 1820 and 1821, was a mistake, and whether the sale was or was not in fact made for the taxes as they appear charged on the books, except in the deed road taxes are not mentioned in connection with this tract; the amount of taxes in the deed corresponds in each year with the amount of county tax charged for those years: you will have the books and the deed, and determine for yourselves whether the sale was in fact for road taxes or for the county taxes as charged. If you find that it was for road tax, then the treasurer's deed conveyed no title, as there is no evidence of an assessment of road taxes for 1820 or 1821. But if you find it was made for the county taxes charged by the county commissioners for the years 1820 and 1821, based upon the valuation of the assessment at the triennial assessment of 1820, which remained unpaid and due as before stated, then the purchaser George A. Frick acquired thereby the legal title.

"When there has been a valid assessment of unseated land and a sale for the taxes overdue one year, and there is an allegation of payment of the taxes before the sale by the owner or some other person enuring to his benefit, the burden of proof is upon the person alleging such payment." * * *

The verdict was for the plaintiffs.

The defendants sued out a writ of error and assigned for error the decisions of the court on the questions of evidence, and the charge.

*J. G. Freeze* and *S. Linn* (with whom was *C. R. Buckalew*), for the plaintiffs in error.—The burden of showing that the entries in the books were made by the commissioners was on the plaintiffs; that being a fact necessary for their case: Cuttle *v.* Brockway, 12 Harris 145. The testimony of the clerk, is of no avail unless he knows the fact. The evidence was not sufficient to submit to the jury that there was a proper assessment and it should have been so declared by the court: McReynolds *v.* Longenberger, 7 P. F. Smith 13; Heft *v.* Gephart, 15 Id. 510; Wells *v.* Smyth, 5 Id. 159. The claimant under a tax sale must prove all the pre-requisites to sale; as much that the tax had been due for a year as that it had been assessed: McCall *v.* Lorimer, 4 Watts 352; Miller *v.* Hale, 2 Casey 432.

[McReynolds v. Longenberger.]

*A. Ricketts* and *Woodward* (with whom were *M. E. Jackson*, and *H. M. Hoyt*), for defendants in error.—The Act of 12th April 1842, s. 2, Pamph. L. 266, 2 Br. Purd. p. 1443, pl. 7, declares that "all records of the county commissioners, charging lands as unseated with arrears of taxes, shall be evidence *of an assessment.*" Not only are such books competent to be admitted, but they are evidence of an assessment of the taxes that are mentioned in them. Official registers are "recognised by law because they are required by law to be kept, because the entries in them are of public interest and notoriety, and because they are made under the sanction of an oath of office, or at least under that of official duty: 1 Greenl. Evid., sect. 484; McCoy *v.* Michew, 7 W. & S. 386. When road taxes have been registered in the commissioners' books, the maxim *omnia presumuntur rite esse acta* applies, and transcripts or whatever antecedent acts the law requires, are presumed: Hess *v.* Herrington, 23 P. F. Smith 438; Heft *v.* Gephart, 15 Id. 510. A treasurer's deed in fee simple acknowledged in open court is all the statutes require, and the unnecessary recitals are surplusage and to be rejected: Moulson *v.* Rees, 6 Binn. 32. A misrecital may be explained by parol: Leshey *v.* Gardner, 3 W. & S. 314; Hinds *v.* Scott, 1 Jones 19.

The opinion of the court was delivered, May 11th 1874, by

Agnew, C. J.—This case appears to have been well tried by the learned judge below, and his opinion so carefully adapted to the facts it was our intention to affirm it without an opinion. But it seems to us on reflection one subject, the assessment, requires notice in order to advert to a proper distinction, the absence of which might lead to a misapplication of our decision. "The want of an assessment in fact by some competent authority is not such an irregularity as is covered by the Act of 1815. It is essential to a valid sale and the want of it is more than irregularity." This is the language of the late Chief Justice Thompson, in his opinion in this case upon a former writ of error, 7 P. F. Smith 27. Of necessity this assessment applies to the very taxes for which the land is sold, and therefore to the year for the taxes of which the land is sold; for it is clear that the assessment for other years cannot be for the taxes of the year for which the sale is made. The 4th section of the Act of 13th March 1815, curing *irregularities* in the assessment, does not cure the want of any assessment. Hence we said at this term in the case of Greenough *v.* The Fulton Coal Company, 24 P. F. Smith 486, that "while the triennial assessment is the basis of the subsequent assessment and the valuation then fixed will remain unless changed by reason of alterations in the property, it does not *per se* constitute the annual assessment of the property with taxes. The charging of lands with taxes is an annual process, for the reason that neither the property itself,

[McReynolds *v.* Longenberger.]

nor its ownership, necessarily continues the same for triennial periods," we held therefore in that case that the fixing of a rate for a certain year is not to be referred to a preceding triennial assessment made two years before, so as to constitute a complete assessment for the subsequent year. This was stated as a legal proposition, and not in relation to any reference the commissioners themselves might make in fact to a former triennial assessment in making the assessment of the subsequent year. Looking then to what the late Chief Justice said himself in this case, as well as to the undoubted law of assessments, it is plain he did not mean, in Heft *v.* Gephart, 15 P. F. Smith 510, referred to by the defendant in error, to unsay what he had said in this case, and to hold that a mere triennial assessment two years before with the fixing of a rate for a subsequent year, is in itself an assessment for the subsequent year. His language is somewhat general, but must be read in view of the facts of the case which he was discussing. In that case there was not only the triennial assessment in evidence, but there was a paper evidencing an assessment for the year in question, 1853, made out by the clerk of the commissioners, containing a list of the tracts, and columns headed, "number of acres," "warrantee's names," "valuation per acre," "valuation per tract," "owners." This contained the taxes assessed on the tract from 1851 to 1856. The important question in the case was presented in the plaintiffs' point that if the jury should find the paper writing purporting to be a valuation and return for the year 1853 regular, the absence of legal evidence of the rates fixed by the commissioners, &c., is so entirely wanting that the tax could not be said to have been due one year, at the time of sale. There was therefore in that case not only the triennial assessment, but also evidence tending to establish the annual assessment for the year in question. That the whole opinion is to be read in the light of these facts is shown by the concluding sentence, on this part of the case, in which the Chief Justice said : " The valuation and return by the assessor as shown by the paper attached to the assessment book was a question of fact for the jury and they have found in favor of it." It cannot be doubted that there must be evidence of an assessment regular or *irregular* for the particular year, and this brings into view the effect of the last clause of the 21st section of the Act of 12th April 1842, Pamph. L. 266, declaring that " all records of the county commissioners charging lands as unseated with arrears of taxes, *shall be evidence* of an assessment." It was in view of this provision, and especially referring to it, the Chief Justice, in Heft *v.* Gephart, asserted that the return of the triennial assessment, attached as it was to the original assessment (the paper in question) both for that year, brought from the commissioners' office, was sufficient evidence of the assessment. The Act of 1842, therefore, without dispensing with the necessity of proving an assessment for

the particular year, widens the range of the evidence by bringing into the case "all records of the commissioners' office *charging* lands as unseated with arrears of taxes." Papers in that office will now support the *fact* of an assessment, that before the act would not be evidence of an assessment *per se*. It is on this foundation the case of Hess *v.* Herrington, 23 P. F. Smith 438, decided in 1873, was rested in part, by Sharswood Justice. In that case there was no evidence of an actual valuation and return by the assessor, but there was an actual assessment and charging of the lands with taxes by the commissioners themselves. The assessment was irregular, but the Act of 1842, by helping out the evidence of an assessment, helped out the assessment itself. There may be no actual assessment in evidence, but there may be evidence from records and papers in the commissioners' office, from which an assessment may be inferred : and this it was the purpose of the Act of 1842 to sustain. The fact of the assessment being sustained, any irregularity in making it is then covered by the Act of 1815. The contest in the case before us is therefore narrowed to the single question whether there was sufficient evidence to go to the jury, that the commissioners in the year 1818 and 1819 had charged the lands with the taxes for which it was sold. It seems to us, though the evidence was slender, it was not so vague and uncertain as to have justified the judge in withdrawing it from the jury. The foundation for the charges in the book called the "bound book," was laid by the introduction of the triennial assessment of 1817, the preceding year. This left it only a question of identity whether the bound book containing the so-called returns of assessors for 1818 and 1819 were records of the commis· sioners' office. Of this there was some evidence in the testimony of the clerk of the commissioners, in connection with the book itself. On its face the book was composed of two parts, one in each end of the book ; one part was manifestly the work of the treasurer containing his lists of unseated lands and the sales. In the other end the appearance was different. The entries were headed, "Returns of unseated lands," for certain townships, including the township in question. The work of the treasurer is not found here, and the lists are such as would be made by the commissioners in charging the lands with taxes for the respective years. The clerk said, "I call this a transcript of unseated lands, it must be the commissioners' transcript, the books came from the commissioner's office." In cross-examination he said : "It does not appear to me to be the treasurer's book. It appears to me to be the book put into the treasurer's hands to collect the taxes." This testimony is weakened, but is not *conclusively* rebutted by his further statement that the other end contained the sales of the treasurer made from June 12th 1820 for the taxes of 1818 and 1819, and that

[McReynolds *v.* Longenberger.]

the offices of the treasurer and commissioners have been kept together. This made it only a more difficult question for the jury to decide, but still it had to go to them for a decision. In corroboration there was also the evidence of the usage of the commissioners and their modes of dealing with the unseated lands as shown by other records of the office. That such corroborative evidence may be given follows from what has been said in various cases as to the mode of keeping their accounts of the unseated lands. See Heft *v.* Gephart, 15 P. F. Smith 518, and cases cited. Nor was the submission of the case to the jury contrary to the former decision in this case in 7 P. F. Smith 14. The former trial took place before the same judge in the court below, and he had charged that the assessment of 1817 and the "bound book," although the treasurer's sales for 1820 are entered in the back part of the latter, contained in themselves sufficient primâ facie evidence of an assessment by the commissioners to authorize the sale by the treasurer in 1820. In thus charging he assumed the part which the jury only ought to have determined, to wit: that this book was the work of the commissioners in that part of it and not that of the treasurer. Hence the Chief Justice in his opinion began on this point by saying, "was there such an assessment shown by the plaintiff below. The learned judge who tried the case ruled, *as a matter of law*, that there was, and this ruling is the foundation of one of the principal errors in the case." He proceeds then on this basis to examine the characteristics of the book, and to show that it was for the jury to pass upon the testimony of identity ; and that it was not even primâ facie the commissioners' book "so as to authorize (he says) the court in assuming it so to be." "The treasurer is not (he proceeds to say) an assessing officer nor is his book evidence of an assessment. Standing thus it requires proof to establish it to be an unseated land book or list furnished by the commissioners, *and the proof was for the jury*."

The judge below having, in the last trial, submitted the case to the jury on evidence, meagre it is true, but not insufficient, we ought not to reverse him for doing what under the former opinion he was reversed for not doing.

Finding no error in the record, the judgment is affirmed.