Maria McClements, Susan Smith, Lucinda Smith, Sarah J. McCaffrey, Frank McCaffrey and John A. Scott, Guardian ad litem of Sarah Effie McCaffrey, Minor Child of Basil McCaffrey, deceased, and Philip McCaffrey, Heirs of Bernard McCaffrey, deceased, Appellants, v. Michael Downey.

*Ejectment—Tax title—Unseated land—Improvements by intruders.*

A tract of unseated land may be severed by an intruder or by operation of law, and when its entirety is once destroyed, a part may be seated and a part unseated, but the intention of an intruder will not destroy its entirety unless that intention is evidenced by an open and notorious act, such as marking the extent of his claim upon the ground, thereby indicating to the owner and to the public how far his possession extends.

It is not enough that the settler's claim as to acreage is defined in the absence of a demarcation of boundaries by a survey, or by marks on the ground or by fences built or in some other visible and notorious way; failing such evidence of demarcation the improvement has the effect of seating the whole tract and a subsequent sale of a portion of the tract, for taxes, as unseated land is void.

*Tax sale—Unseated land—Evidence.*

Where the severance of an intruder's settlement has been effected by deed thereafter the residue of the tract might be assessed and sold as unseated land and, when the case turns on whether in fact it was unseated evidence that at the time of bringing suit (1880) it was all woodland, and from the appearance and character of the land, it had never been cleared, while it might not conclusively prove that it was unseated at the time of the imposition of taxes (1856) for which sale was made, yet it would have a tendency in that direction, and would be proper for the jury's consideration.

*Tax title—Unseated land—Identification—Evidence.*

In a question whether the land assessed and sold is the land in controversy, the burden of proof is upon the plaintiff, and a jury has no more right to infer the fact than the court.

An assessment, however, is not required to contain in itself all the circumstances which are necessary and sufficient to identify the land without recourse to other evidence. It must be a " source of identification :" It must " lead to identification." Where circumstances, relied on to show the association, of the name given in the assessment, with the land claimed, rest in parol, as they must in many cases, the question of identification must necessarily be submitted to the jury.

*Tax title—Surplus bond—When same must be given—Evidence.*

Where land is sold as unseated land for county, state, school and road taxes, and plaintiff proves the state and county taxes regularly levied and assessed and the school and road taxes regularly returned to the commissioners as unpaid, and when under the statutes then in force the county commissioners were empowered, and it was their duty to enforce collection of the latter taxes in the same manner as county taxes and this was done, it was error, upon this statement of facts, for the court to rule that there was no evidence of the assessment of the road and school taxes and that therefore the sale was void because the purchaser did not give a bond for the surplus over and above the county and state taxes.

By such ruling the court failed to give due effect to the curative provisions of the act of March 14, 1815, 6 Sm. L. 300, and the act of April 12, 1842, P. L. 266, relative to the records of the county commissioners as evidence of an assessment.

In the present case, therefore, there was apparently no surplus and the omission to give a surplus bond even if that is to be presumed would not render the deed void.

Argued May 5, 1896. Appeal, No. 62, April T., 1896, by plaintiffs, from judgment of C. P., Indiana Co., March T., 1880, No. 71, on verdict for defendant. Refore Rice, P. J., Willard, Wickham, Beaver, Reeder, Orlady and Smith, JJ. Reversed.

Ejectment for tract of land sold for taxes as unseated land. Before Greer, P. J., of the 17th judicial district, specially presiding.

The facts sufficiently appear in the charge of the court, which is as follows :

The plaintiffs in this case, on the 26th day of January, 1880, brought this action of ejectment to recover the possession of one hundred and fifteen acres of land, more or less, situate in Pine township, Indiana county. The writ describes the land, giving its boundaries, etc. The plaintiffs seek to recover this land upon two treasurers' deeds; one made in June, 1852, and

one made in June, 1856, by the respective treasurers of Indiana county.

The law in regard to taxes is this: Where taxes are properly assessed against land and where the record in regard to their assessment and to the regularity of the proceedings after the assessment is in the right shape, the land may be sold for the taxes and the purchaser takes a good title. The owner of the land has two years to redeem the property. If not redeemed in that time the purchaser can claim and hold the land as his own—a good deed. This being a title provided fully by a statute of our state, the statute must be strictly followed; and if it is not strictly followed the purchaser at the treasurer's sale takes no title to the land. That is one of the reasons, gentlemen, that we have had so much trouble and spent so much time in reaching the present conclusion.

Now this writ of ejectment says that this land was surveyed on the warrant granted to John Bousman, and to support this claim the plaintiffs offer in evidence a connected draft from the office of the secretary of internal affairs at Harrisburg, showing the John Bousman tract of land, which is bounded on the north by the John Myers tract, on the east by John Hays, on the south by John Burkholder, and on the west by John Musser. The survey shows four hundred and five acres and one hundred and five perches in the tract. The warrant was dated May 3, 1793. It was surveyed November 22, 1794. I am not sure that it is in evidence, but I believe it is admitted, at least, that this property was owned by the Fishers. The plaintiffs, to sustain their title, offer in evidence the assessment of taxes in the years 1853 and 1854 for unseated land, assessed in the name of John Bowman, to show that the county tax was $1.60 and the state tax $1.20, making $2.80, one year, and the same amount for the following year; the amount due for these two years being $7.60, county and state tax. This property was returned in the name of John Bowman and it was sold in the name of John Bowman, and the deed was made in which it was treated as the John Bowman tract. The deed was acknowledged in court.

[There was no surplus bond filed. The law requires that wherever the deed shows that the purchase money was paid, either in the body of the deed or by receipt to the deed, a sur-

plus bond must be filed; that is, a bond must be put on file to pay the money over to the owner of the land, the money over and above the amount of the taxes. The sale of this property at that time was for $30.60; therefore, it was in excess of the amount of taxes due and owing that were regularly assessed. There was some proof as to some road tax and, we believe, school tax, but the plaintiff in this case failed to show that this road tax and school tax were regularly assessed. Consequently we treat them as not assessed and therefore not before the treasurer nor before the commissioners; and the only amount that was owing at the time regularly assessed, if regularly assessed, was $7.60, and whatever the costs of sale would amount to. This sale for $30.60 was in excess of this amount, and the deed showing on its face that the money was paid to the treasurer, and also a receipt attached to the deed showing that the treasurer had received the money. It therefore became the duty of the party in this case to file a surplus bond as required by the act of assembly. That not being done, the court ruled out the deed and decided that it was not before you.] [1] So you have not before you the deed made in 1856, the court, for these reasons, having taken it away from your consideration.

Then the plaintiffs claim upon another deed, made when James Hood was treasurer of this county in 1852. They offer in evidence the property as assessed to John Bowman for the years 1850 and 1851, and follow that up with the return and sale of the property by James Hood to Mr. James Mitchell. They follow that up and show that Mr. Mitchell assigned his interest in that to Dr. St. Clair, or at least Dr. St. Clair became the owner of that deed; and Dr. St. Clair conveyed that land by deed in evidence here to Bernard McCaffrey, the father and person under whom these plaintiffs are claiming. Now, gentlemen, if that was all regular and right, these plaintiffs would have a good deed so far to this land, if nothing else were shown on the other side.

This land was sold as unseated land, and it was entered on the records here as unseated land. It was sold as the John Bowman tract. It was assessed in Greene township, and sold and described as lying and being in Greene township. In fact it was in Pine township. Pine township was taken off Greene

township in 1849, and perhaps by some mistake or oversight it was carried on in the township of Greene. And so far as this particular tract itself was concerned we have no evidence that it was ever assessed in Pine township. We do not say that it was or was not, but we have no evidence as to that. The law provides that a treasurer's sale may be made in some other name than the one in whom it is warranted or claimed. It may be claimed or owned by one man, and it may be assessed in the name of another man, and it may be sold and a good title may be made, but the plaintiff must show some marks of identification. The burden of proof is on the plaintiff to show that it is the land of the owner. There must be some circumstances, there must be some identification, there must be some connection between the two names that will bring notice home to the man owning the land, something to notify him that it is his land that is being sold. For instance, if one of you, gentlemen, owned the farm that was in possession of your father during his lifetime, his name being John and your name James, and the farm sold in the name of John, and you knew it was being sold in that name, you would have knowledge that that was your farm, or at least there was enough there to put you on notice that that was the farm you had, and it would be your duty to go and examine the matter. There would be connection enough, circumstances enough, surroundings enough there to put you on your notice to go and inquire and examine into it. But suppose it was sold in the name of Peter Smith, a man that you perhaps had never heard of. It would not give you notice that it was your farm and you would not know it, and therefore your title would not be taken from you,—cannot be taken from you until you have some notice that it is your land that is being sold.

[Now, we say to you, gentlemen, that so far as the assessment here is concerned, this land being assessed in the name of Bowman, there is no proof of any identification, any connection between this land of Bowman and the land of Bousman that would give notice to the owners of the land that it was their land that was being sold; and for that reason we say to you that the sale was bad, and that the verdict must be for the defendant.] [2]

The rule of law is that a plaintiff, in an action of ejectment,

must recover on the strength of his own title. You may be in possession of land that you do not own, but I can't put you out; no other man in the county can put you out. There is only one man can put you out and that is the man that shows he has a title for that land. The man in possession holds until another man comes and shows that he is the owner of the land. No man in the world can put you out, only the real owner, and that only when he has proved his title. Now, gentlemen, we say to you that under these facts and under the law in this case the verdict must be for the defendant.

We are going to ask you to do another thing, to pass upon a question and render a special verdict that may save trouble, perhaps, hereafter, should the court not be right in this. We think we are right, but the court is not always right. If it were, we would not need a Supreme Court or a Superior Court. We want you to find as a fact whether or not Michael Doyle lived on this four hundred and five acres of land.

[If Michael Doyle lived on it, had it cleared, had a house and barn there and was cultivating the land, it then would not be unseated land. It would be seated land, and this sale would not carry the title. The law is just like this, where a man goes upon a part of an unseated tract of land, clears, builds a house and lives on it, the whole of the tract becomes seated land; it is all seated. The law presumes that he has possession of all of it. But if he goes upon part of it and has lines and marks designating to where his lines run, where he claims to, then that part only becomes seated of which he has possession. Unless there were lines run, marks upon the ground, something there to designate where Michael Doyle claimed and worked to, then the law presumes that he was in the possession of all of it; the whole tract became seated and the land could not be sold as unseated land. It makes no difference in this case whether there was personal property enough on this to pay the taxes; it would not make a bit of difference; the character of the land is changed. Now, if you believe from the proof in this case that Michael Doyle lived on part of this land, if you believe he had a house there and a barn there in the years 1848, 1849, 1850 and 1851, if you believe he was there these years living on that ground, farming the part he had cleared and having a house and barn there, and that there was no line cutting

off any particular part of it to him, then the whole tract was seated. It would be unseated if you believe there was a line there, marks on the ground, but I don't know where you will get the proof for it. It is the duty of the plaintiff to show it if there was a line there and where it was; to show you that there were lines designated by marks on the ground so that the part that he claimed could be known and ascertained with certainty.] [3]

Your duty here, gentlemen, is to render a verdict in favor of the defendant, and to find, further, a special verdict as to whether or not Michael Doyle was in possession of this land. We do not mean the land in dispute; we mean the Bousman tract; and whether or not there were any lines run or marked on the ground so that the same could be known and ascertained with certainty prior to 1852. The defendant in this case put in evidence a deed to Michael Doyle, dated in September, 1852. Of course there were lines run at that time, but that is after the date of the sale, that is, after the date of the Hood deed to Mitchell.] [4]

Counsel for the plaintiff ask us to pass upon this point:

The court is requested to charge the jury that if they find that Michael Doyle was on the John Bousman tract of land in 1849 and 1850, claiming up to defined lines, embracing ninety acres or thereabouts, and that no part of his claim embraced the land in dispute or the residue of the tract, his residence on the land claimed by him would not seat that part of the tract not claimed by him.

We affirm that point. We say that is the law.

[Now, gentlemen, take the case and render a verdict in favor of the defendant, and find a special verdict as to whether or not Michael Doyle was on the land and whether or not there were defined lines and marks.

By Mr. Banks: Will the court allow us to send out the Doyle deed?

By the Court: The Michael Doyle deed would not help you to come to a conclusion whether there was any line there or not without some other proof. Of course there is a line there after the date of that deed; but you must find that there was a line drawn there before 1850 or 1851.] [5]

Same day, August 29, 1895, in open court, before verdict

rendered, counsel for the plaintiffs except to the charge of the court, the parts to be hereafter marked in brackets, and at their request a bill of exceptions is accordingly sealed by the court.

Verdict for defendant.  Plaintiffs appealed.

*Errors assigned* were, (1–5) portions of the judge's charge, reciting same; (6) in refusing to admit the testimony proposed to be offered by the plaintiffs, which proposition and ruling of the court thereon is as follows, to wit:

Mr. Banks : I now propose to show that the land in dispute was regularly assessed for county and state taxes in the name of John Bowman for the years 1853, 1854 and 1855 ; that for the same years there was a return of the land for road tax, school tax and poor tax, for taxes unpaid. . The assessment of the poor tax, road tax and school tax cannot be shown, but we propose to show the return of the taxes by the collector ; to be followed by the certificate of the commissioners to the treasurer authorizing the sale of this land for the payment of these taxes. To be followed by showing the sale and the deed from T. M. McCandless, treasurer, to James Dixon ; to be followed by showing the deed from James Dixon to Bernard McCaffrey. Also propose to follow it by showing that the John Bousman tract was known as the John Bowman tract.  We further propose to show that the land was sold for the tax and costs.  The offer of the school, poor and road tax is to show that there was no necessity for a surplus bond.

By the Court: It being admitted by the plaintiffs that there was no assessment of school tax or road tax made by the school directors or supervisors according to law for the years 1853, 1854 and 1855, and also admitting that there was no surplus bond filed, the court is of the opinion that the deed is not regular and passes no title to the purchaser ; therefore, the deed was ruled out on this account.  The county and state tax, as shown by the proof of the plaintiff, amounted to $8.00, and the sale of the land amounted to $30.60, far in excess of the amount of the county and state tax.  Therefore the fact that road and school taxes were returned not properly assessed would not release the filing of a surplus bond as required by the act of assembly.

Mr. Banks : We don't admit that there was no regular assess-

ment. The only thing we said was we couldn't prove it. We want to offer the testimony of Thomas Cresswell, taken in the other trial, to show that Pine township was formerly part of Green.

Mr. Shoemaker: We will admit, for the purpose of this case, that Pine township was formed out of Green, September Sessions, 1849.

Mr. Hood: October 6th, 1849, they held their first election.

Mr. Banks: The admission covers it all. We now propose to show that two hundred acres of land were regularly assessed in Green township in the name of John Bowman for county taxes for the year 1852, with the sum of $1.20, and for the year 1853 with the sum of $1.60, and for the year 1854 with the sum of $1.60; also, with certain taxes assessed and imposed by the supervisors of said township for opening and repairing public roads and highways, to wit: For the year 1852 with the sum of $4.00; for the year 1853 with the sum of $4.00; for the year 1854 with the sum of $4.00; and for the year 1855 with the sum of $4.00. Also, with certain taxes assessed for common schools, to wit: For the year 1852 with the sum of $2.80; for the year 1853 with the sum of $2.80. Also, with certain taxes assessed for the use of the commonwealth for the year 1852 with the sum of $1.20; for the year 1853 with the sum of $1.20; for the year 1854 with the sum of $1.20, amounting in the whole to $29.60. That the state and county tax named were regularly assessed and levied; that the school, poor and road taxes were regularly returned, but that the assessment of those taxes cannot be shown; that the commissioners of Indiana county regularly returned this land to the treasurer for sale for the taxes aforesaid, and that the same, after due and public notice according to law, was sold by T. M. McCandless, treasurer of Indiana county, on the 17th day of June, A. D. 1856, to one James Dixon, for the tax and costs, amounting to $30.60; that the taxes as returned and the costs thereon amounted to the said sum of $30.60 at the time of the sale thereof; this to be followed with evidence that the land sold in the name of John Bowman as unseated land was unseated land in the name of John Bousman; that it was known as the Bowman land; that Pine township was formerly part of Green; that the owners of the land, under whom the defendant claims, knew at the time of the sale thereof for taxes that this

452　　　　　McCLEMENTS' APPEAL.

Assignment of Errors—Opinion of the Court. [2 Super. Ct.

was the John Bousman tract of land in Pine township that was being sold; to be followed by showing that James Dixon deeded the land in dispute to Bernard McCaffrey; this for the purpose of showing title in Bernard McCaffrey of the John Bousman tract of land in Pine township for which this ejectment is brought. The purpose of offering the return of the school, poor and road taxes is to show that there was no necessity for a surplus bond.

By the Court: The court has passed upon this question twice fully. If the plaintiff desires to show facts in this case which are competent evidence as regards the deed made in 1852, we will hear it, and hear anything that may be offered, and pass upon it as it is offered. We will hear any evidence as regards the name under which this tract of land was known in the community; we will hear any evidence which will go to explain any evidence or circumstance as connected with or material in the issue now before the court; but as to the deed made in 1856, that question is entirely settled by ruling of the court. An exception is granted to the plaintiff and a bill sealed.

(7) In refusing to admit the testimony proposed to be offered by the plaintiff, which proposition and ruling of the court thereon is as follows, to wit:

Mr. Banks: We propose to show by good and competent testimony that the land in dispute was, at the time of bringing this suit, all woodland; that from the appearance and character of the land it had never been cleared. This for the purpose of showing that the land in dispute at the time of the taxation of the same was unseated land.

By the Court: We will receive any proof as to the condition of the land sold at the time it was sold and before, but we think it incompetent to attempt to show what the condition of part of the land is at a later date and refuse it. An exception to the plaintiff and a bill sealed.

*J. N. Banks*, with him *G. W. Hood*, for appellants.

*Samuel Cunningham, Frank Keener*, of *Watson & Keener*, with them *John H. Hill* and *F. A. Shoemaker*. for appellees.

OPINION BY RICE, P. J., October 12, 1896:

This was an action of ejectment for a part of a tract of land

in the warrantee name of John Bowsman or Bousman, in Pine township.

The plaintiffs claim under two tax sales of unseated land in the name of John Bowman in Green township; the first in June, 1852, to James Mitchell, and the second in June, 1856, to James Dixson. It is claimed that both of these titles became vested in Bernard McCaffrey, the plaintiffs' ancestor.

Pine township was set off from Green township in 1849.

The principal questions are: (1) Whether the Doyle improvement seated the whole tract. (2) Whether the failure to give a surplus bond invalidated the sale of 1856. (3) Whether an assessment of land in the name of John Bowman, in Green township, sufficiently identified a tract in the warrantee name of John Bousman or Bowsman, in Pine township.

1. The evidence went to show that Michael Doyle made an improvement on the Bousman tract as early as 1849; that he cleared thirty or forty acres; that he built a house and barn, raised crops, and lived on the tract, and that he claimed about ninety acres. It is stated, in the appellant's history of the case, that he went into possession under a contract with the owners for the sale of ninety-eight acres, of which seventy-five were part of the Bousman tract and the residue part of the Meyers tract adjoining, and that his purchase was surveyed off to him. Unfortunately for the plaintiffs the record of the evidence, as returned to us, wholly fails to show these important facts. It does not appear in the evidence what his title was, or that he had any title prior to his deed of September 29, 1852 (which was after the treasurer's sale in question), or that the boundaries of his claim were defined by any contract or deed or by lines run or marked on the ground, or in any other way prior to the sale of 1852. The special finding of the jury is: "we do not find any marks or lines to identify the Doyle tract from the remainder of the tract prior to 1851."

An entry upon an unseated tract of land by any one, whether as an intruder or under the title of the owner, either for the purpose of residence or cultivation, makes the tract seated and prevents a sale for taxes: Campbell v. Wilson, 1 W. 504; Kennedy v. Daily, 6 W. 269; Wallace v. Scott, 7 W. & S. 248; Mitchell v. Bratton, 5 W. & S. 451; Wilson v. Watterson, 4 Pa. 214. Nothing is better settled than this: Biddle v. Noble,

68 Pa. 279. See also Jackson v. Stoetzel, 87 Pa. 302, where many of the cases will be found collected. But where an intruder designates the part that he claims, by lines distinctly marked upon the ground, he is only liable for the taxes of the part claimed by him, and the remainder of the tract may be sold as unseated: Campbell v. Wilson, 1 W. 503; Harper v. Mc-Keehan, 3 W. & S. 238. If, however, he does not designate or limit his possession or claim by metes or bounds or lines made upon the ground or in some other way, his entry and possession will be considered as giving the character of seated land for the purposes of taxation to all lying within the bounds of the tract or survey as previously designated into which he has entered: Mitchell v. Bratton, 5 W. & S. 451; Jackson v. Sassaman, 29 Pa. 106; Green v. Watson, 34 Pa. 332. The case of Ellis v. Hall, 19 Pa. 292, is sometimes referred to as authority for the proposition that there is a distinction between an improvement by the owner and one by a mere intruder, and that in the latter case the seating of the whole tract depends wholly upon the intention of the intruder—whether to appropriate the whole or only a part of the tract. There is a distinction, it is true, and Judge LOWRIE did suggest in that case that the intention must necessarily enter into the question; for, says he, no man can properly be charged with taxes on land which he does not claim to own or use, nor beyond the extent of his claim; but he did not say, and the case is not authority for the proposition, that a mere claim of a certain number of acres without in any way defining the boundaries of the claim works a severance. In a later case the court stated this question: " But is it true, where an intruder enters upon a tract of unseated land, clears and cultivates a part of it, without any intention of appropriating the residue, that he is only liable for the taxes of the part cleared and cultivated by him, and that the remainder of the tract remains unseated and may be assessed and sold as such?" This it will be noticed is the precise question before us. After an elaborate discussion of Ellis v. Hall, this conclusion was reached: " A tract of land may be severed by an intruder or by operation of law, and when its entirety is once destroyed, a part may be seated and a part unseated, but the intention of an intruder will not destroy its entirety unless that intention is evidenced by an open and notorious act, such as marking the extent

of his claim upon the ground, thereby indicating to the owner and to the public how far his possession extends : " Jackson v. Sassaman, 29 Pa. 106. In the case of Biddle v. Noble, 68 Pa. 279, it appeared that one Middleton had made an improvement on a tract of eleven hundred acres. The owner, by article reciting that Middleton owned an improvement " on which he now resides," agreed to sell him two hundred acres, so as not to interfere with the claim of any other settler. There, as in the case at bar, the settler's claim as to the number of acres was defined, but it was nevertheless held that the contract did not so define the land as to sever it from the remainder of the tract, and that, in the absence of a demarcation of the boundaries of the claim, by a survey, or by marks on the ground or by fences built or in some other visible and notorious way, the improvement had the effect of seating the whole tract. Applying these principles to the facts of this case, as they are presented to us on the record, we are constrained to hold that the tax sale in 1852 passed no title, for the reason that the evidence does not show such a demarcation of the boundaries of the Doyle improvement and claim by survey, by marks on the ground, or otherwise, prior to his deed of September 29, 1852, as would sever it from the residue of the tract and leave the latter liable to assessment and sale as unseated.

2. The legal proposition involved in the ruling which is the subject of the first and sixth assignments of error is, substantially, that when unseated land is sold by the treasurer for an amount equal to the taxes and costs, and the deed recites the fact that they were paid by the purchaser, and does not recite the giving of a surplus bond, the presumption is that none was given; therefore, the purchaser asserting such title in an action of ejectment must prove the due and legal assessment of all the taxes for which the land was sold; it is not enough for him to prove that some of them were regularly levied and assessed. This is putting a pretty heavy burden on the purchaser; but assuming for present purposes the correctness of the ruling as an abstract legal proposition, what proof of an assessment must the purchaser furnish in order to make out a prima facie case ? Let us examine this question with reference to the facts of the present case. In this examination we are not to be understood as dealing with the evidence by which those facts are to be

established, but with the facts themselves, assuming them to have been established by competent and sufficient evidence. The plaintiffs offered to prove the following facts: (1) The commissioners certified the John Bowman tract in Green township to the county treasurer, with the following taxes charged against it as unseated land.

|       | Co.    | St.    | School | Road.   |
|-------|--------|--------|--------|---------|
| 1852. | $1.20  | $1.20  | $2.80  | $4.00.  |
| 1853. | 1.60   | 1.20   | 2.80   | 4.00.   |
| 1854. | 1.60   | 1.20   |        | 4.00.   |
| 1855. |        |        |        | 4.00.   |

Total, $29.60.

(2) The land was bought at treasurer's sale in June, 1856, by the plaintiffs' predecessor in title, for the foregoing taxes and costs. (3) The state and county taxes were regularly levied and assessed, and the school and road taxes against the land were regularly returned to the commissioners as unpaid. Under the statutes then in force the county commissioners were empowered, and it was their duty to enforce collection of the latter taxes in the same manner that county taxes were collected: Act of April 6, 1802, sec. 7, 3 Sm. L. 515; Act of March 30, 1811, 15 Sm. L. 252; Act of June 13, 1836, sec. 7, P. L. 525. According to the offer they proceeded to perform this duty by charging against the land the taxes thus returned, and certifying the same to the county treasurer along with the county taxes. In declaring upon this statement of facts, that there was no evidence of an assessment of the road and school taxes, and that therefore the sale was void because the purchaser did not give a bond for the surplus over and above the county and state taxes, we think the court failed to give due effect to the curative provisions of the act of March 14, 1815 (6 Sm. L. 300), and the provisions of the act of April 12, 1842 (P. L. 266), relative to the records of the county commissioners as evidence of an assessment. Where the treasurer upon a sale of unseated lands for taxes charged too much for costs, and thus appropriated the whole amount of the purchase money to the taxes and costs, whereas upon a correct calculation there would have been a surplus for which the purchaser should have been given a surplus bond, it was held that his

not having done so would not under the circumstances defeat his title: Gibson v. Robbins, 9 W. 156. Where the bond was given for a less sum than it ought to have been owing to the fact that part of the taxes for which the sale was made were not legally assessed against the land, it was held that it was such an error of the officers as the purchaser was not bound to look into, and would not affect his title: Frick v. Sterrett, 4 W. & S. 269. Two tracts of land were assessed in the name of George Cooper, one for taxes amounting to $2.34, and the other amounting to $15.52. In transferring them from the assessment books to the treasurer's sale book the amounts were transposed so that the land in dispute, which had been assessed with $15.52 was sold for the taxes of $2.34. The amount bid was $6.00, and the surplus, after adding $2.87 costs, was 74 cents, for which the purchaser gave bond. It was held that this was an irregularity merely, which came within the curative provisions of the act of 1815: Bayard v. Inglis, 5 W. & S. 465. Want of assessment in fact by some competent authority is not such an irregularity as is cured by the act of 1815: McReynolds v. Longenberger, 57 Pa. 13. But the act of 1842, without dispensing with the necessity of proving an assessment, widens the range of the evidence by bringing into the case " all records of the commissioners' office charging land as unseated with arrears of taxes : " McReynolds v. Longenberger, 75 Pa. 13. See also Bratton v. Mitchell, 7 W. & S. 259 ; Cuttle v. Brockway, 24 Pa. 145; Thompson v. Chase, 2 Gr. 367 ; Wells v. Smyth, 55 Pa. 159 ; Heft v. Gephart, 65 Pa. 510 ; Hess v. Herrington, 73 Pa. 438 ; Greenough v. Fulton Coal Co., 74 Pa. 486. None of the cases cited by the appellee is authority for holding that the deed is void if a surplus bond is not given under such circumstances as these. All that they decide is, that, where there is a clear surplus, the giving of a bond is indispensable, and that its place cannot be supplied by payment of the money: Connelly v. Nedrow, 6 W. 451 ; McDonald v. Maus, 8 W. 364. But in the present case there was apparently no surplus. The treasurer would not think of demanding nor would a purchaser think of tendering a bond under such circumstances. Therefore it may be fairly presumed that none was given. But the reason for presuming this is an equally good reason why the purchaser should not forfeit his title on

account of a possible irregularity for which he was in no wise responsible. If, as the plaintiffs offered to prove, the John Bowman tract was regularly assessed as unseated land, with the county taxes heretofore mentioned, the treasurer had authority to make the sale, and a title would pass although there were no evidence of an assessment of the road and school taxes sufficient to support the sale : Bratton v. Mitchell, supra. And if the latter taxes were regularly returned to the commissioners by the proper local officers, and were charged against the land by the commissioners, and the land was sold for a sum sufficient only to pay the taxes apparently charged against it, and the costs, and the purchase money was paid, the omission to give a surplus bond, even if that is to be presumed, would not render the deed void.

3. There remains the question of identification. After an exhaustive review of all the earlier cases, Judge AGNEW said : " The result is that where the assessment wholly fails to lead to identification, so that neither the owner nor the officer can tell that his land is taxed, the duty of payment cannot be performed and the assessment is void : " Phila. v. Miller, 49 Pa. 440. The doctrine of that case, as affirmed and explained upon a second writ of error, was further discussed in a still later case, and was declared to be " that the assessment itself, which is the record that states the land upon which the duty of paying the taxes is imposed, must contain some element either of circumstance or name which will lead to identification. . . . : the assessment is void only where it wholly fails to *lead* to identification. But although there be no other element of description, yet, if the *name* in which the assessment is made has become linked to the land by some known claim of title or possession, the cases cited and commented on in the opinion show that it is a source of identification and will support the assessment : Strauch v. Shoemaker, 1 W. & S. 166 ; " Glass v. Gilbert, 58 Pa. 266–290. These principles have been recognized and applied in later cases and may be considered as well settled : Lyman v. Phila., 56 Pa. 488 ; Brotherline v. Hammond, 69 Pa. 128 ; Hess v. Herrington, 73 Pa. 438 ; Franklin Coal Co. v. Bertels, 109 Pa. 550 ; Putnam v. Tyler, 117 Pa. 570 ; Fisk v. Corey, 141 Pa. 334. Identity of name is prima facie evidence of identity of tract, but the names " Bousman " or " Bowsman "

are not identical in orthography or sound with the name "Bowman" and it seems plain that the name "John Bowman" applied in the assessment to a tract in Green township does not of itself and without more identify a tract in the warrantee name of "John Bousman" or "Bowsman" in Pine township; especially where there is no evidence that there was not a John Bowman tract in Green township. If the case rested here the question would be, not merely whether the assessment was void, but whether the land assessed and sold was the land in controversy. The burden of proof was on the plaintiffs, and while the question of identity is one of fact, to be decided by the jury, a jury has no more right to infer the fact without proof than the court. Recognizing the necessity of other proof to connect the name given in the assessment with the tract in controversy the plaintiffs attempted to show that it was known in the community as the Bowman tract. The first witness, upon his direct examination, seemed to be uncertain whether the tract was known as the Bogman, the Bausman or the Bowman tract, and upon cross-examination he admitted that it was likely that his first knowledge that it was called the Bowman tract was obtained only some ten or twelve years before, from Bernard McCaffrey, the plaintiff's ancestor. The testimony of the second witness was equally vague and uncertain, and besides that, he admitted that he had only known the land about fifteen years. Even if it be conceded that it was competent to identify the tract by proof that it was known in the community by the name given in the assessment, the testimony above referred to—which is all there is upon the subject—was too vague and uncertain to warrant a finding that it was commonly known as the John Bowman tract. The learned judge was clearly right in holding that upon the evidence actually before the court and jury, there was no sufficient identification of the land assessed and sold.

The foregoing conclusion is based on the evidence actually before the court, which it must be understood related solely to the sale in 1852 and the assessments on which it was made. In the face of the plaintiffs' offer, the rejection of which is the subject of the sixth assignment of error, it is not fair to assume that it was all the evidence which the plaintiffs could furnish to sustain the assessments upon which the sale of 1856 was

made. In connection with the other facts relative thereto, which we have heretofore considered, the plaintiffs offered to prove that the land in controversy was generally known as the Bowman tract, and that the owners knew that that tract was being sold. In ruling upon this offer as a whole the learned judge said that such evidence was competent and would be received. It is evident however that he had reference to the sale and deed of 1852; for he said, "as to the deed made in 1856, that question is entirely settled by the ruling of the court." It is argued and we think conclusively that it would have been useless to introduce the offered evidence as to the identification of the tract in the assessments and deed of 1856 in the face of this positive ruling that the sale was void because no surplus bond was given. We must assume therefore that if the deed had been admitted, the plaintiffs would have made good their offer as to the subject of identification.

The authorities agree, if we understand them correctly, that an assessment is not required to contain in itself all the circumstances which are necessary and sufficient to identify the land without resort to other evidence. It must be a "source of identification;" it must "lead to identification." For example, if the assessment be in the name of some person who has been an occupant of the land, or of some person who has claimed title to the land, those facts need not, and ordinarily would not appear on the face of the assessment, but may be proved by evidence aliunde. Where the circumstances which are relied on to show the association of the name given in the assessment with the land claimed, rest in parol, as they must in many cases, the question of identification must necessarily be submitted to the jury as a question of fact: Franklin Coal Co. v. Bertels, 109 Pa. 550; Woodside v. Wilson, 32 Pa. 52. Land lying in one township may pass under an assessment and sale for taxes describing it as lying in another, provided there are other means of description sufficient to identify the land, of which, generally, the jury are the judges: Stewart v. Shoenfelt, 13 S. & R. 360; Miller v. Hale, 26 Pa. 432. "In making out an actual assessment of unseated land which has been sold for taxes, much liberality has always been shown by the courts in receiving evidence. . . . Until all the evidence bearing upon the question of the assessment is in, it would be unsafe for the court to pro-

nounce upon its effect: " AGNEW, J., in Lyman v. Phila., 56 Pa. 503. The name Bowsman might very naturally come to be written and spoken Bowman, and the tract come to be commonly known by the public and the taxing officers as the Bowman tract. · If these facts can be established by competent testimony, and if, in addition, the plaintiffs can prove that the owners knew that the tract assessed and sold in that name was the John Bowsman tract, we are of opinion that the question of identity should be submitted to the jury under properly guarded instructions.

4. As the case must go back for another trial, a word should be added as to the offer of evidence, the rejection of which is the subject of the seventh assignment of error. A severance of the Doyle claim and improvement was effected by his deed of September 29, 1852. Thereafter the residue of the tract might be assessed and sold as unseated, if it was' in fact so. Evidence that at the time of bringing suit (1880) it was all woodland, and that from the appearance and character of the land it had never been cleared, might not conclusively prove that it was unseated at the time of the imposition of the taxes for which the sale of 1856 was made, but it would have a tendency in that direction, and would be proper for the jury's consideration.

The judgment is reversed and a venire facias de novo awarded.